EXHIBIT "A"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

| New York State Division Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Marco Trujillo** | **631- 509 -0505** | **8/26/69** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5 Whinston Street, Coram, NY 11727** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **New York City Police Department, New York City & et. al.** | **500+** | **(212) 273-6171** |

| Street Address | City, State and ZIP Code |
|---|---|
| **One Police Plaza** | **New York, NY  10038** |
| **The City of New York**  **100 Church Street** | **New York, NY 10007** |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☒ RACE | ☒ COLOR | ☐ SEX | ☐ RELIGION | ☒ NATIONAL ORIGIN |
|---|---|---|---|---|

| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ GENETIC INFORMATION |
|---|---|---|---|

☒ OTHER *(Specify)*    ETHNICITY, BREACH OF CONTRACT

DATE(S) DISCRIMINATION TOOK
Earliest — Latest

**From 2008**    **December 1, 2013**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**See Attached.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |

Date _____ / _____ / 14    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

JOANN SQUILLACE
Notary Public, Qualified in New York County
State of New York
Reg # 02SQ6093678
Commission Expires 02/27/2016

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

-----------------------------------------------------------------------------------X

MARCO TRUJILLO,

                Claimant,

        -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY POLICE DEPARTMENT
CAPTAIN DEODAT URPRASAD, NEW YORK CITY POLICE
DEPARTMENT DEPUTY INSPECTOR JOHN D'ADAMO, NEW
YORK CITY POLICE DEPARTMENT CHIEF THOMAS PURTELL,
NEW YORK CITY POLICE DEPARTMENT INSPECTOR JOHN
DANBERRY, NEW YORK CITY POLICE DEPARTMENT SERGEANT
JOHN RAJAN, NEW YORK CITY POLICE DEPARTMENT LIEUTENANT
ARIOLA, NEW YORK CITY POLICE DEPARTMENT CAPTAIN NICOLE
PAPAMICHAEL, NEW YORK CITY POLICE DEPARTMENT
DEPUTY CHIEF MCNAMARA, NEW YORK CITY POLICE DEPARTMENT
SERGEANT GEORGE EBRAHIM, NEW YORK CITY POLICE
DEPARTMENT INSPECTOR PAUL PIEKARSKI, NEW YORK
CITY POLICE DEPARTMENT CAPTAIN THOMAS TRAYNOR, NEW YORK
CITY POLICE DEPARTMENT LIEUTENANT FRANK BASENDELLO,
NEW YORK CITY POLICE DEPARTMENT LIEUTENANT JESUS ROMERO,
NEW YORK CITY POLICE DEPARTMENT SERGEANT BENEVOLENT
ASSOCIATION'S MANHATTAN NORTH DELEGATE SERGEANT CLIFF
THIELEKE and "JOHN DOES" and "JANE DOES", names being fictitious
intended to be officers/representatives/agents/servants of the New York City Police
Department, individually and in their official capacities,

                Respondents.

-----------------------------------------------------------------------------------X

**CHARGE OF
DISCRIMINATION**

     Claimant, Marco Trujillo, (hereinafter "Claimant"), in his individual capacity states as

follows:

## INTRODUCTION AND FACTUAL BACKGROUND/ALLEGATIONS

    1. This is an action against Respondents to redress a pattern and practice of wrongful

and unlawful conduct including, but not limited to: unlawful disparate treatment, unlawful

discrimination based upon race, ethnicity and/or national origin, unlawful hostile work

environment, unlawful retaliation and/or unlawful constructive termination/forced

resignation/retirement as well as related pendent state claims including, but not limited to, assault, battery, false imprisonment and related claims in violation of: Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 1983, 1981, 1981(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(I), New York Executive Law Art. 15 (NY Human Rights Law) New York State Human Rights Law Sections 290-297, the Administrative Code of the City of New York, the Constitution of the State of New York and the laws and the Constitution of the United States of America, denial of Claimant's State and Federal Constitutional Right to Equal Protection of the Law in violation of the 14th Amendment to the Constitution of the United States of America, denial of Claimant's right to be free from excessive force and/or free from cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution and loss of employment/salary/wages/title/position/job/rank and related income and benefits therefrom.

2.     Prior to his constructive termination/forced resignation due to the unlawful conduct of the Respondents herein, Claimant Marco Trujillo was a Sergeant with the New York City Police Department and served in said NYPD for over twenty-two (22) years. He is a male Hispanic and is of Spanish/Hispanic/Latino ethnicity/race/national origin and of Dominican descent.

3.     That from 2008 continuing to and through April 2010, Claimant was assigned to the Intelligence Division. Respondents then, in unlawful discrimination, hostile work environment and unlawful retaliation against Claimant, transferred him from the Intelligence Division after Respondents, and in particular, Respondent Inspector John Danberry (Caucasian/white male), falsely accused him of failing to follow search warrant protocols when Respondents knew that same allegation was without legal merit.

4.      Respondent Danberry then falsely charged Claimant with transporting a prisoner in an unauthorized police vehicle for which Claimant received Charges and Specifications by/with Respondents.   Claimant was found 'NOT GUILTY' by the Trial Commissioner as the Trial Commissioner correctly determined that the vehicle in question was assigned to Claimant by the federal government in conjunction with and connection to the nature of his assignment.

5.      After being found 'Not Guilty', Respondents transferred Claimant out of the Intelligence Division to the 13th Precinct and, despite being found "Not Guilty" of said charges, said charges remained on Claimant's NYPD departmental records by Respondents.

6.      That Claimant was told/advised by NYPD Lieutenant Miller that Claimant was transferred out of the Intelligence Division because Respondent Danberry hated Claimant – explicit retaliation by Respondent Danberry against Claimant herein.

7.      That claimant's retaliatory transfer to the 13th Precinct was a demotion for Claimant given Claimant's seniority and activity numbers whereby, in transferring Claamant to said 13th Precinct, Claimant was further forced to work day tours (instead of nights) which had a direct and proximate reduction in/of Claimant's income salary by approximately more than ten (10) percent as retaliation and punishment against Claimant.

8.      That Claimant was forced/compelled to suffer and sustain this economic loss in salary/income for approximately nine (9) months – the longest day tour assigned to any officer in that squad when there were officers there for seven years who never worked a day tour for nine (9) months.

9.      That from on or about April 2010 through on or about June 2012, Claimant was assigned as one of the patrol supervisors for which he worked several different assignments.

10.     That on or about December 2011, Respondent Deputy Inspector John D'Adamo (Caucasian/White male) attempted to coerce/force Claimant to 'voluntarily' transfer into Patrol Borough Manhattan South Anti-Crime Unit which Claimant refused.

11      That on or about June 2012, Respondents, and in particular, Respondent Chief Thomas Purtell (Caucasian/White male), transferred Claimant (involuntary transfer) from the 13th Precinct to the Patrol Borough Manhattan South Anti-Crime Unit as Respondent Purtell wanted to improve the Unit's 'numbers' and wanted Claimant to achieve same for him.

12.     That Claimant complained to at that time NYPD Lieutenant Harrington (now Captain Harrington) who was at that time one of the supervisors at the Conditions Unit, that Claimant did not want to work in the Conditions Team but would accept the assignment as he was told that, if he didn't, it would be treated as an insult to Respondent Purtell. That as a direct and proximate result of the Respondents, and in particular Respondent Purtell, forcing/compelling Claimant to transfer to Manhattan South conditions Unit, Claimant suffered and sustained an economic loss in salary/income of approximately more than Thirty Thousand Dollars ($30,000.00).

13.     That Respondent D'Adamo, in response to Claimant notifying him of the Conditions Unit having high Civilian Complaint review Board complaints due to police misconduct/unlawful conduct, and that he did not wish to work there, Respondent D'Adamo threatened Claimant that Claimant had to work there whether Claimant liked it or not.

14.     Upon Claimant's arrival to the Patrol Borough Manhattan South Anti-Crime Unit, where Claimant first worked with Respondent Sergeant John Rajan (South Asian male), Respondent Rajan made his dislike of and racist/discriminatory attitude/beliefs against Hispanics like Claimant clear to Claimant.

15.      That Respondent Rajan was friendly with and connected with the upper tier of supervisors/officers at the 13th Precinct and was known to do favors for them and, in return, the supervisors, including the individually named Respondents herein, turned a blind eye to Respondent Rajan's unlawful conduct/misconduct/violent behaviors.

16.      That Respondent Rajan, without authority, permission or consent by Claimant, and without authority pursuant to the rules, codes, regulations and/or policies of the New York City Police Department, unlawfully accessed Claimant's official department records and disclosed Claimant's information contained therein to others in the Patrol Borough Manhattan South Anti-Crime Unit including the nature of Claimant's sensitive assignment in the Intelligence Division; a disclosure that could jeopardize Claimant's safety and life.

17.      Claimant repeatedly reported Respondent Rajan's foregoing misconduct/unlawful conduct to the entire chain of command assigned to Patrol Borough Manhattan South up to and including to Respondent Purtell as well as to Respondents Romero, Traynor, D'Adamo, Piekarski and NYPD Lieutenant Mendez, but, to no avail. Claimant repeatedly requested that the Respondents, including those named herein, conduct an investigation of Respondent Rajan and into his misconduct, unlawful and violent actions, conduct and behaviors but, to no avail.

18.      Claimant also complained to the chain of command about Respondent Sergeant Rajan's history of violent acts, conduct and/or behavior towards others including, but not limited to other officers and those citizens who Respondent Rajan stops, detains, arrests and/or imprisons, thereby exposing the NYPD and its members of the service/its officers who work with Respondent Rajan, including Claimant herein, to unnecessary and needless excessive force, brutality, assault, battery and other complaints being made for physical injuries being sustained

at the hands of Respondent Rajan as well as for his violation of citizens' civil rights by, including but not limited to targeting poor, Black/African American and/or Hispanic citizens.

19.    That the Respondents took no remedial, corrective and/or disciplinary action against Respondent Rajan nor in response to Claimant's complaints thereof.

20.    That on or about August 21, 2012, Claimant again registered/made a complaint to Respondent Captain Thomas Traynor (Caucasian Male) about Respondent Rajan's history of violent conduct, as well as complaining about Respondent Rajan's unlawful accessing of Claimant''s personal; department records and disclosing the contents of same to others in the department..    Claimant further advised Respondent Traynor that other members of the service/officers of the Department did not want to work with Respondent Rajan because of Respondent Rajan's unlawful and violent conduct, actions and behavior.

21.    That in response to Claimant's complaint to Respondent Traynor about Respondent Rajan, Respondent Traynor told Claimant that he, Respondent Traynor, ordered Respondent Rajan to run a P.E.P.E.R. on him to access Claimant's personal departmental records.

22.    That Claimant believes that Respondent Traynor is lying to Claimant when he told Claimant that he ordered Respondent Rajan to run the P.E.P.E.R. on Claimant in the Respondent's furthered effort, while acting under color of law, to protect and shield Respondent Rajan form disciplinary action by the Department as Respondent Rajan is well connected to the superiors ion the chain of command (including Respondent Traynor) as he is a member of the Desi Society within the NYPD and he does many favors for the superiors within the chain of command (including Respondent Traynor) and, in return for same, acting under color of law, the Respondents cover up, lie, protect, deny and shield Respondent Rajan from adverse action,

disciplinary action, being brought up on charges and the like despite knowing of Respondent Rajan's unlawful conduct. If, in fact Respondent did order Respondent Rajan to run the P.E.P.E.R. on Claimant, then Respondent Traynor, who is close friends with Respondent Rajan, would be in violation of NYPD departmental policy and, to date, no adverse action or disciplinary action has been taken against Respondent Traynor (or Respondent Rajan) for same nor have Respondents taken any corrective or remedial measures/action against Respondent Rajan and/or Traynor therein.

23.     That on or about February 21, 2013, during a meeting at Patrol Borough Manhattan South with Respondents' Purtell, Piekarski (Caucasian Male) and Basendello, Claimant again made, registered complaints to the Respondents about Respondent Rajan's unlawful and violent conduct, actions and behavior and how Respondent Rajan unlawfully accessed and disclosed Claimant's personal departmental records and personal information contained therein but, to no avail.

24.     That on or about April 17, 2013, while inside of Patrol Borough Manhattan South, Claimant again registered/made complaints about Respondent Rajan to Respondents Piekarski and D'Adamo and further told said Respondents that Claimant did not feel safe or comfortable working with Respondent Rajan given Respondent Rajan's unlawful and violent actions, conduct and behavior but, again, to no avail as Respondents did nothing about Claimant's complaints about Respondent Rajan.

25.     That on or about April 18, 2013, while Claimant was exiting Patrol Borough Manhattan South, without reason or provocation or any conduct whatsoever on the part of Claimant herein, Respondent Rajan physically attacked/assaulted Claimant and, before Respondent Rajan could further attack/assault/injure Claimant, Respondent Rajan was

physically restrained by two (2) police officers. After breaking free from their restraint, Respondent Rajan then threatened Claimant again. That Respondnet Rajan told Claimant that he was told/made aware by Respondents herein that Claimant made/registered complaints about Respondent Rajan and Respondent Rajan's unlawful/violent conduct, actions and behavior and Respondent Rajan attacked Claimant because of same.

26.    That Respondent Lieutenant Jesus Romero (Hispanic Male), who at the time of Respondent Rajan's attempted physical assault on/of Claimant on or about April 18, 2013 was the Integrity Control Officer, was aware of and knew of Respondent Rajan' s misconduct/unlawful conduct against Claimant  but, acting under color of law in the Respondents' furthered and continued course of action to protect Respondent Rajan and cover up his unlawful conduct, did not discipline Respondent Rajan, did not take any corrective or remedial action, did not report Respondent Rajan not notify the Internal Affairs Bureau of Respondent Rajan's unlawful conduct/misconduct against Claimant therein.

27.    That on or about April 19, 2013, the very next day after Respondent attacked/assaulted Claimant on or about April 18, 2013, while Claimant was inside of Patrol Borough Manhattan South, Respondent Rajan again initiated another physical confrontation and attack on Claimant.  Respondent Rajan had ordered the subordinate officers out of the Anti Crime Office and, as the acting supervisor of the Unit, Claimant ordered the officers to suit up and prepare to go out on patrol. While Claimant was inside the room/office that housed his locker and uniform equipment, an office/room that Respondent Rajan had no authority to be in, while Claimant was retrieving his equipment from his locker and had his back to the door, Respondent Rajan unlawfully and without permission, consent or authority, and without any provocation, reason or conduct by Claimant whatsoever, entered Claimant's office and from

behind, attacked, assaulted, battered, choked, hit, struck, pushed, falsely imprisoned and otherwise was violent and used excessive force against Claimant herein.

28.    That NYPD Officers Traci McLaughlin (Female), Eric Ahlfeld and Michael Bellagamba all had to physically restrain and remove Respondent Rajan from Claimant's neck and from choking Claimant therein. In response to the foregoing Officers' attempt to restrain and stop Respondent Rajan from continuing to choke and attack/assault Claimant, Respondent Rajan then physically pushed NYPD Officer McLaughlin.

29.    After Claimant was freed from Respondent Rajan's chokehold, assault and battery, Respondent Rajan immediately ran to his friend, Respondent Deodat Urprasad (South Asian Male), the Commanding Officer of the Patrol Borough Manhattan South Investigations Unit. -- the same unit where Respondent Rajan improperly, unlawfully and without authorization, permission or consent, accessed Claimant's official department records and disclosed same information to other Officers.

30.    That both Respondents Rajan and Urprasad are members of the NYPD Desi Society, the fraternal organization that represents South-Asian Officers, and both Respondents had previously made it known that they do not like Hispanics including Claimant herein.

31.    Claimant informed, made/registered a complaint and/or put Respondents on notice about Respondent Rajan's unlawful attack/assault/choking/battery committed against him on or about April 19, 2013. In particular, Claimant notified Respondent D'Adamo about Respondent Rajan's unlawful attack/assault/choking/battery committed against him to which Respondent D'Adamo told Claimant that he was going to notify the Duty Captain about same. Claimant further complained to Respondent D'Adamo of the physical pain/injuries that he was suffering from as a result of Respondent Rajan's unlawful attack/assault/battery including, but

not limited to: pain in his neck, upper back and left shoulder; pain and strangulation marks around Claimant's neck, the feeling that something "popped" out of his left shoulder, a tear in and/or broken left shoulder.

32.     As a direct and proximate result of Respondent Rajan's unlawful assault/attack/choking/battery committed against him, Claimant was transported to Bellevue Hospital where he was treated.

33.     Upon Claimant's arrival back at the command after being assaulted/attacked/battered and choked by Respondent Rajan and after being treated at Bellevue Hospital for same, Claimant, heavily medicated for his injuries sustained therefrom, was met by Respondent Sergeant Benevolent Association's Manhattan North Delegate Sergeant Cliff Thieleke (Caucasian Male) to discuss with him the incidents involving Respondent Rajan.

34.     That as Claimant was going to be questioned regarding same, Claimant requested an attorney but was unlawfully denied/refused same.  Instead, during the questioning by/with Respondent Thieleke, Respondent Thieleke, acting under the color of law and in the Respondents' continued and furthered efforts to protect Respondent Rajan, cover up respondent Rajan's unlawful and violent conduct and to prevent any adverse and/or disciplinary actions being taken against Respondent Rajan, told Claimant not to report/notify/advise or even mention that Respondent Rajan choked/strangled him.  Acting under color of law and in the Respondents' continued and furthered efforts to protect Respondent Rajan, cover up respondent Rajan's unlawful and violent conduct and to prevent any adverse and/or disciplinary actions being taken against Respondent Rajan, Respondent Thieleke told/advised Claimant to lie about Respondent Rajan's attack/assault/choking/battery and further advised Claimant that if he did not lie, Claimant would be suspended and arrested.  Respondent Thieleke further warned/threatened

Claimant that he Respondent Thieleke has worked with Respondent McNamara and the only way Claimant will not be suspended is if Claimant does not notify/report or tell anyone about Respondent Rajan's choking/strangulation of Claimant.

35.    Claimant refused to lie and told Respondent Thieleke that he would not lie about Respondent Rajan choking/strangling/assaulting/attacking/battering Claimant. Despite Respondent Rajan's unlawful and criminal conduct against Claimant, and despite the Respondents knowing of same, in retaliation against claimant for not lying about the choking/strangulation by Respondent Rajan, the Respondents did not take any remedial/corrective actions, did not refer/report the matter to Internal Affairs Bureau as required by NYPD department policy, did not arrest Respondent Rajan, did not suspend Respondent Rajan, nor take any disciplinary action against him for same.

36.    In further retaliation against Claimant and in furtherance of Respondents' acting under color of law and in concert with the other, in efforts to protect/shield/cover up and/or prevent Respondent Rajan from being brought up on charges (criminal and/or departmental), being suspended and/or having any disciplinary action taken against him for the unlawful and criminal acts committed against Claimant on or about April 19, 2013, Respondents, in an intentional violation of NYPD departmental policy, compelled/forced Claimant to undergo questioning by Respondents without an attorney and while Claimant was under medication that he was taking for the injuries caused by Respondent Rajan thereby intentionally acting under the color of law and in concert with the other to lessen the adverse/disciplinary/criminal consequences to/for Respondent Rajan, depriving Claimant of Claimant's rights and further damaging/undermining Claimant's rights to pursue a criminal arrest and prosecution of

Respondent Rajan therefor. The foregoing was ordered/implemented/conducted/put in place by Respondents Purtell, McNamara, Piekarski, and Papamichael (Caucasian Female).

37. That Respondents Purtell, McNamara, Piekarski, and Papamichael have covered up similar instances of police misconduct in the past.

38. That Respondents Urprasad, Ariola (Caucasian Male), and Ebrahim (Caucasian Male) intentionally violated department policy in their undertaking/conducting of the criminal investigation regarding Respondent Rajan's assault/attack/battery/choking and use of violent excessive force against Claimant herein. That these Respondents did the foregoing in concert with the other and acting under color of law in furtherance of the unlawful retaliation against Claimant and in furtherance of Respondents' efforts to shield/protect Respondent Rajan and to cover up/deny and allow to go unpunished and unanswered for, Respondent Rajan's criminal, unlawful and departmental misconduct, actions, conduct, behavior committed against Claimant herein.

39. That during the Respondents' investigation of Respondent Rajan attacking/assaulting/battering/choking of Claimant, and, in particular during the Respondents' interview/questioning of Claimant, Respondent Papamichael, despite knowing that Claimant was, among other things, choked/strangled by Respondent Rajan around./at Claimants neck, unlawfully/inappropriately and intentionally, without Claimant's consent/permission/authority, grabbed Claimant around his neck in efforts to simulate the attack by Respondent Rajan all the while questioning Claimant's truthfulness about his claims (despite the physical and medical evidence and the other police officers who witnessed same) and all the while bragging about her skill in martial arts.

40.    In retaliation against Claimant for not lying about Respondent Rajan choking/strangling him, and in furtherance of Respondents acting under color of law and in concert with the other to protect/shield Respondent Rajan and to prevent any adverse/criminal/disciplinary charges/actions against Respondent Rajan, Respondents, knowing that Claimant was the victim of a crime committed against him by Respondent Rajan, placed Claimant on "Modified" Duty/Assignment as a punishment as same is a restriction/limitation of Claimant's performance of duty, brought Claimant (not Respondent Rajan) on charges of being in a physical altercation and transferred him to another Unit (VIPER) as a punishment as he lost any overtime duty and lost overtime salary/income as a direct result from same.    That Respondent Urprasad, friend of Respondent Rajan, brought the charges against Claimant and conducted the investigation which should have been performed by IAB, not Respondent Urprasad.

41.    That while Claimant was brought up on charges, placed on "Modified" duty and transferred to VIPER Unit where he lost any overtime salary, in direct contrast, the perpetrator of the crime against Claimant, to wit: Respondent Rajan, was transferred by Respondents to another Unit where Respondent Rajan gained overtime duty and income; thereby disparately treating, unlawfully retaliating against and unlawfully discriminating against Claimant because of his race, national origin/ethnicity and in retaliation for Claimant's repeated complaints about Respondent Rajan and his violent and unlawful conduct.

42.    That Respondents Purtell, McNamara, Piekarski, D'Adamo, Papamichael, Urprasad, Ariola, Ebrahim and/or Thieleke, acting under color of law and in concert with the other, intentionally failed to notify NYPD's OEEO Office and NYPD's Internal Affairs Bureau about Claimant's complaints about Respondent Rajan and about Respondent Rajan's unlawful,

criminal and violent attack/assault/battery/choking/strangulation/use of excessive force against him.

43.    That as a direct and proximate result of Respondent Rajan's unlawful, criminal and violent attack/assault/battery/choking/strangulation/use of excessive force against Claimant on or about April 19, 2013, Claimant has required emergency medical care/treatment and continued medical care and treatment including, but not limited to surgery for/on his left shoulder/arm, post surgery treatment and requiring medication including but not limited to Percocet and sleeping pills.

44.    That as a direct and proximate result of Respondent Rajan's unlawful and criminal attack/assault/battery/choking/use of excessive and unwarranted force against the Claimant, Claimant was out from duty for the injuries he sustained therefrom, including, but not limited to the broken left shoulder and subsequent surgery therefor, and, as a result of same, Claimant lost his overtime duty income and night shift differential from on or about April 19, 2013 to on or about December 1, 2013 when Claimant was forced to resign/retire; thereby causing Claimant to sustain an economic loss of approximately more than Forty Thousand Dollars ($40,000.00).

45.    In addition to the incidents, occurrences, conduct, acts and/or omissions/failures of/by the Respondents stated and set forth above, Claimant consistently and repeatedly complained to Respondents, and to Respondent D'Adamo in particular while Claimant was assigned to the Intelligence Division, that the Respondents unlawfully and disparately treated minority officers, and in particular Hispanic officers, as compared to their white/Caucasian counterparts who received preferential and better treatment by/with the Respondents.

46.    In response to Claimant's complaints about the unlawful disparate treatment by Respondents to minority and, in particular, Hispanic officers, instead of noting or reporting his complaints or taking any remedial/corrective action or investigation, Respondent D'Adamo often told Claimant that Claimant was a "fictitious Hispanic" who did not speak Spanish fluently and was a "fake" Hispanic; thereby creating, facilitating and fostering an unlawful hostile work environment against Claimant because of his race, national origin/ethnicity.

47.    That while Claimant was out on sick leave due to the serious physical injuries caused by Respondent Rajan, from on or about April 19, 2013 to on or about December 1,2 013, Respondents unlawfully and continuously harassed Claimant. Respondents visited Claimant's home while he was out on sick leave more than his white/Caucasian officers counterparts; Respondents assigned a surveillance unit to watch Claimant and follow him wherever he went including when Claimant went for medical treatment and appointments with his legal counsel; transferred Claimant to VIPER against department regulation as an officer out on line of duty sick cannot be transferred just so that Respondents could deduct ten (10) percent of Claimant's salary; reduced Claimant's pension as a direct result of unlawfully reducing his salary/income by assigning him as a punishment to VIPER and reducing his salary by ten (10) percent.

48.    That because of the unlawful discrimination against Claimant because of his race, national origin/ethnicity, the hostile work environment, the unlawful disparate treatment of Claimant based upon his race, national origin/ethnicity, the assault/attack/choking of Claimant by Respondent Rajan, the Respondents' failure to take remedial/corrective/disciplinary action against Respondent Rajan, the Respondents' failure to respond at all to Claimant's complaints about Respondent Rajan, the unlawful harassment of Claimant by Respondents including the Respondents placing him on "Modified" duty/assignment when he was victimized and assaulted

by Respondent Rajan and the Respondents harassing and following Claimant when he was out on sick leave in order to undergo surgery on his left shoulder, the Respondents unlawfully forced/compelled Claimant to retire/resign on or about December 1, 2013 from the NYPD after over Twenty-Two (22) years of service, thereby unlawfully constructively terminating Claimant due to the Respondents' unlawful hostile work environment, disparate treatment, discrimination and retaliation because of Claimant's race, national origin/ethnicity and in retaliation against Claimant for exercising his lawful right to register complaints about the workplace and conditions therein including but not limited to his complaints about Respondent Rajan, Respondent Rajan's misconduct, Respondent Rajan's unlawful and violent conduct, Respondent Rajan;s violations of citizens' rights and civil liberties and about Respondent Rajan's unlawful and criminal attack, assault, battery, use of unwarranted excessive force, choking and strangulation of Claimant which resulted in serious personal injuries to Claimant including, but not limited to: a torn and/or broken left shoulder requiring surgery and subsequent medical treatment therefor, injuries/pain to his neck, permanent scars to Claimant's left shoulder and arm, pain and suffering, mental anguish, humiliation, emotional distress (intentional and negligent).

49.      That prior to, at the time of and subsequent to Respondent Rajan's unlawful and criminal attacks/assaults/battery/use of excessive and unwarranted force/choking and strangulation of Claimant on or about April 18, 2013 and April 19, 2013, Claimant repeatedly registered/made complaints about Respondent Rajan and his violent and criminal behavior, his violations of citizens' rights and civil liberties and his violent actions to Respondents including but not limited to the named Respondents herein, but to no avail.

50.      That at all times herein mentioned, the Respondents were acting within the scope of their employment, under the color of law, as state actors, and in concert one with the other.

51.    That, upon information and belief, in September 1999, a Federal lawsuit was commenced by Twenty-Two individuals and the New York City Police Department Latino Officers' Association alleging discriminatory and disparate application of the New York City Police Department's disciplinary rules, procedures and punishments of Latinos, Afro-Americans and other minority police officers by Respondents City and NYPD.

52.    Based upon information and belief, the Honorable Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York certified the foregoing lawsuit as a class action which included all African-American and Hispanic Police Officers and certain civilian employees of the New York City Police Department from 1995 forward then employed with the New York City Police Department and those who will be employed by the New York City Police Department as uniformed officers.

53.    Based upon information and belief, that lawsuit alleged that African Americans and Latino Officers were less likely to be acquitted and have their charges dismissed than Whites at Departmental Hearings with the New York City Police Department and sixty (60) and thirty (30) percent more likely, respectively to be found guilty at the New York City Police Department trials than Whites.

54.    Based upon information and belief, that lawsuit alleged that in terms of overall dispositions by the New York City Police Department, charges against Whites were more often dismissed or resulted in findings of not guilty while Afro-Americans and Latinos were far more often found guilty and that when findings of guilt were handed down, Afro-Americans and Hispanics were terminated by the New York City Police Department from said Department with greater frequency than White officers and the White officers received less penalties/punishment.

55.    Based upon information and belief, the lawsuit further alleged that, overall and in general, Hispanics, Afro-Americans and other minority officers were disciplined and treated more often, more adversely and/or more severely than White/Caucasian and/or non-minority officers were by the Respondent New York City Police Department

56.    Based upon information and belief, the Respondents City and NYPD settled the foregoing lawsuit with the Claimants of that lawsuit in which, the Respondents provided a monetary award to the Claimants of that lawsuit and members of the class and, more significantly, Respondents agreed to an injunctive relief that the Respondents, City and NYPD would be enjoined from discriminating based upon race, color, national origin, or ethnicity in the future.

57.    Based upon information and belief, on or about December 2003, pursuant to the settlement of the foregoing class action lawsuit, Respondents City and NYPD entered into a signed stipulation of settlement – a contract- by the terms and conditions of which the Respondents City and NYPD were obligated to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being investigated, charged, disciplined or penalized in a discriminatory manner, to wit: a "Disciplinary Review Unit".

58.    That based upon information and belief, pursuant to said contract, the signed stipulation of settlement therein, the Respondents were obligated to establish this "Disciplinary Review Unit" to track and analyze whether minority members of the New York City Police Department, like Claimant herein, were being treated in a discriminatory manner when being

disciplined as well as the Respondents were to establish an "Advisory Committee" to address employment discrimination and retaliation concerns.

59.    Further, based upon information and belief, pursuant to same contract/stipulation of settlement, the Respondents were to develop a "Know Your Rights" guide to the New York City Police Department discipline system and to enhance existing databases and create new databases and report data thought to be relevant to analyzing whether or not discrimination was continuing on the New York City Police Department discipline system.

60.    Based upon information and belief, on or about September 17, 2004, the District Court entered a judgment and order approving said stipulation of settlement/contract, and its terms and conditions, in the foregoing class action lawsuit.

61.    Based upon information and belief, the settlement agreement/contract contained specific steps that the Respondents City and NYPD would take to establish procedures to prevent discrimination.

62.    Here, Claimant Marco Trujillo and other Latino/Hispanic/Minority Officers similarly situated as him, are members of the Class set forth in the foregoing lawsuit and are members of the Class of police officers that the foregoing settlement agreement/stipulation/contract was designed and entered into to protect.

63.    Claimant Trujillo is a Spanish/Latino/Hispanic/Minority male who was employed by the NYPD as a police officer at or subsequent to the foregoing settlement/contractual agreement and, as such, is a member of that Class that the foregoing lawsuit and settlement agreement/contract was intended to futuristically protect and, as such, Claimant Franco is a beneficiary of said contract and/or has standing to seek to have a Court compel the Respondents to abide by all of the terms and conditions of same including, but not limited to: compelling the

Respondents to establish a review unit to analyze the NYPD's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being disciplined, investigated, charged, prosecuted, terminated and/or penalized in a discriminatory manner and to comply with the settlement agreement's specific steps that the City and NYPD should have undertaken to establish procedures to prevent discrimination.

64.    Based upon information and belief, per the terms of the foregoing stipulation/agreement, the Respondents City and NYPD were obligated to establish an "Employment Practice Unit" which essentially was slated to provide and conduct the same and/or similar function as the "Disciplinary Review Unit."

65.    The Respondents City and NYPD breached the contract/stipulation agreement in that the Employment Practice Unit is wholly ineffective, inadequate, inept and did not and does not have an efficient system in place to track and analyze whether minority members of the New York City Police Department are being treated in a discriminatory manner when disciplined.

66.    The Respondents City and NYPD breached the contract/stipulation agreement in that the "Employment Practice Unit" has failed and/or did not track and/or analyze whether minority members of the NYPD are being treated in a discriminatory manner when disciplined and their efforts fell short of the terms and conditions outlined in same stipulation/contract and Claimant Franco, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Respondents' failure to implement the terms and conditions of the settlement agreement.

67.    Based upon information and belief, per the terms of the foregoing stipulation/agreement, the Respondents City and NYPD were obligated to establish an "Advisory

Committee" to address employment discrimination and retaliation concerns within the New York City Police Department.

68.    The Respondents City and NYPD breached the contract/stipulation agreement in that the Respondents failed to establish an "Advisory Committee" to address employment discrimination and retaliation concerns within the NYPD and their efforts fell short of the terms and conditions outlined in same stipulation/contract and Claimant Trujillo, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Respondents' failure to implement the terms and conditions of the settlement agreement.

69.    The Respondents City and NYPD breached the contract/stipulation agreement in that the Respondents failed to establish a meaningful and/or effective and/or operable "Advisory Committee" to address employment discrimination and retaliation concerns within the NYPD.

70.    That the Respondents City and NYPD constructively terminated Claimant Trujillo's employment by unlawfully forcing him to resign/retire because of Respondents' unlawful discrimination, hostile work environment, disparate treatment and retaliation against Claimant based upon his race, national origin, color and/or ethnicity, and in unlawful retaliation for Claimant complaining about the hostile work environment and discrimination against him, as well as about Respondent Rajan's unlawful, criminal and violent conduct, violations of citizens' rights and unlawful and criminal assault/battery/attack/choking/strangulation/use of excessive and unwarranted force against Claimant herein.

71.    That the Respondents breached the foregoing contract/stipulation of settlement therein and, had the Respondents complied with the aforementioned stipulation of settlement/contract and its terms and conditions, had the Respondents established a review unit and advisory committee, in addition to the other terms and conditions outlined in said

stipulation/contract, had the Respondents properly and/or adequately established same and/or had the review unit and advisory committee, if so established, been performing its duties as per the stipulation of settlement/contract to try and prevent the unlawful discrimination and disparate treatment of Latino, African American and/or other minority police officers, than the review unit, the advisory committee and the Respondents would have and should have detected, stopped, prevented and/or remedied the very unlawful discrimination, retaliation, hostile work environment and disparate treatment by Respondents against Claimant herein.

72.    That the foregoing stipulation of settlement/contract was designed to, in fact, protect Claimant herein from the Respondents' unlawful treatment, acts, conduct and/or omissions herein in their unlawful, hostile, discriminatory, disparate, intentional, malicious, and/or retaliatory treatment and discrimination against him.

73.    As a result of the Respondents' breach of the foregoing stipulation of settlement/contract, Claimant suffered and continued to suffer, culminating in the ultimate unlawful act of constructive termination/forced resignation/retirement, the very unlawful, hostile, discriminatory, disparate, retaliatory conduct that the Respondents were obligated to establish said procedures to try and prevent and because of the Respondents' breach of same, the Respondents unlawfully continued their course of unlawful, hostile, discriminatory, disparate and retaliatory treatment against Claimant by the Respondents when non-minority/non-Spanish/non-Latino/non-Hispanic police officers were not so treated or constructively terminated by Respondents herein.

74.    That the Respondents breached the foregoing stipulation of settlement/contract and, as a direct and proximate result, Claimant suffered and continues to suffer damages herein including, but not limited to, deprivation of rights, denial of proprietary interest, lost income,

denial of title, rank and position, denial of compensatory salary, denial of pension and retirement benefits, denial of medical benefits, physical injuries, torn/broken left shoulder requiring surgery and subsequent medical treatment, injuries to his neck, pain and suffering, permanent scars to his left shoulder and arm, as well as mental anguish, pain, humiliation and emotional distress (negligent and intentional).

75.     That in addition to the damages, losses, injuries set forth above, Respondents have further unlawfully discriminated against and retaliated against Claimant by, after forcing Claimant to retire/resign (constructive termination), which Claimant would not have done but for Respondents' unlawful and continuing unlawful conduct, Respondents banned Claimant from being able to carry firearms, took his personal firearms from him/his home and stamped his retirement identification card as being prohibited from carrying any firearms and/or restricting his license to carry such firearms thereby preventing Claimant, and tortuously interfering with Claimant's right and ability to seek other employment including but not limited to being a licensed bondsman and/or other employment that requires a license to carry a firearm.  As a direct and proximate result of the Respondents' foregoing further unlawful conduct, Claimant has suffered and continues to suffer economic/monetary damages/losses as he has lost employment opportunities as a direct and proximate result from same.

## PRAYER FOR RELIEF

Claimant is requesting that the City of New York and New York City Police Department institute training, monitoring and assessment procedures/programs/policies that will ensure that discriminatory practices within the New York City Police Department is eradicated so that another officer will not have to suffer the same unlawful discriminatory practices that have been visited upon and continues to be visited upon Claimant.

Claimant is requesting compensation of all back pay , benefits and/or privileges for the times as set forth above that his income/salary/wages were reduced/lessened and from November 30, 2013 (the date of his constructive termination/forced resignation/retirement) to present date.

Claimant is requesting that the unlawful and discriminatory conduct of the parties herein named immediately cease and desist.

Claimant is requesting that the EEOC make a finding/determination of probable cause of unlawful conduct as against each and every Respondent named herein.

Respectfully submitted,

MARCO TRUJILLO

april 25ᵗᴴ 2014

JOANN SQUILLACE
Notary Public/Qualified in New York County
State of New York
Reg # 02SQ6083673
Commission Expires 02/27/20___

2/21/2016