UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 3/29/16 |

MARCO TRUJILLO,

              Plaintiff,

       - against -

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY POLICE
DEPARTMENT CAPTAIN DEODAT URPRASAD,
NEW YORK CITY POLICE DEPARTMENT DEPUTY
INSPECTOR JOHN D'ADAMO, NEW YORK CITY
POLICE DEPARTMENT CHIEF THOMAS PURTELL,
NEW YORK CITY POLICE DEPARTMENT
INSPECTOR JOHN DANBERRY, NEW YORK CITY
POLICE DEPARTMENT SERGEANT
JOHN RAJAN, NEW YORK CITY POLICE
DEPARTMENT LIEUTENANT ARIOLA, NEW YORK
CITY POLICE DEPARTMENT CAPTAIN NICOLE
PAPAMICHAEL, NEW YORK CITY POLICE
DEPARTMENT DEPUTY CHIEF MCNAMARA, NEW
YORK CITY POLICE DEPARTMENT SERGEANT
GEORGE EBRAHIM, NEW YORK CITY POLICE
DEPARTMENT INSPECTOR PAUL PIEKARSKI, NEW
YORK CITY POLICE DEPARTMENT CAPTAIN
THOMAS TRAYNOR, NEW YORK CITY POLICE
DEPARTMENT LIEUTENANT FRANK
BASENDELLO, NEW YORK CITY POLICE
DEPARTMENT LIEUTENANT JESUS ROMERO, NEW
YORK CITY POLICE DEPARTMENT SERGEANT
BENEVOLENT ASSOCIATION'S MANHATTAN
NORTH DELEGATE SERGEANT CLIFF THIELEKE
and "JOHN DOES" and "JANE DOES," names being
fictitious intended to be officers/representatives/agents/
servants of the New York City Police Department,
individually and in their official capacities,

              Defendants.

14 Civ. 8501 (PGG)

**ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

           Plaintiff Marco Trujillo brings claims against the City of New York ("the City"), the New York City Police Department ("NYPD"), and NYPD Captain Deodat Urprasad, Deputy Inspector John D'Adamo, Chief Thomas Purtell, Inspector John Danberry, Sergeant John Rajan, Lieutenant Ariola, Captain Nicole Papamichael, Deputy Chief McNamara, Sergeant George Ebrahim, Inspector Paul Piekarski, Captain Thomas Traynor, Lieutenant Frank Basendello, Lieutenant Jesus Romero, and Sergeant Cliff Thieleke (collectively, the "Individual Defendants"). Plaintiff, a retired NYPD sergeant, alleges that he was subjected to discrimination on the basis of race, national origin, color and ethnicity as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"); the New York State Human Rights Law, Executive Law § 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 et seq. (the "NYCHRL"). Plaintiff asserts myriad additional federal and state claims, pursuant to 42 U.S.C. §§ 1981, 1983, and 1986, the New York State Constitution, and New York common law. Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

           For the reasons stated below, Defendants' motion will be granted.

## BACKGROUND[1]

### I.    FACTS

Plaintiff Marco Trujillo is a retired NYPD sergeant. (Am. Cmplt. (Dkt. No. 15) ¶ 20) He is Latino and of Dominican descent. (Id.)

Between 2008 and April 2010, Plaintiff was assigned to the NYPD's Intelligence Division. (Id. ¶ 21) In 2010, Deputy Inspector John Danberry falsely accused Plaintiff of not following search warrant protocols. (Id. ¶ 22) After Plaintiff complained to Danberry about this false accusation, Danberry retaliated by filing a false disciplinary charge against Plaintiff for transporting a prisoner in an unauthorized police vehicle. (Id. ¶ 23) Although Plaintiff was found "not guilty" of this charge, the charge remained on Plaintiff's NYPD record, contrary to NYPD policy. (Id. ¶¶ 26-28)

In April 2010, Plaintiff was transferred to the 13th Precinct. (Id. ¶ 27) Plaintiff states that Lieutenant Miller told him that Danberry transferred Plaintiff as retaliation for his complaints about Danberry, and as punishment for being found "not guilty" on the disciplinary charge. (Id. ¶ 29) As a result of this transfer, Plaintiff's income was reduced. (Id. ¶ 30)

In December 2011, Deputy Inspector John D'Adamo attempted to force Plaintiff to "voluntarily" transfer to the Patrol Borough Manhattan South Anti-Crime Unit (the "Anti-Crime Unit"). (Id. ¶ 34) Plaintiff told D'Adamo that he did not want to work in the Anti-Crime Unit. (Id. ¶ 35) In retaliation for Plaintiff refusing the "voluntary" transfer, D'Adamo complained about Plaintiff to Chief Thomas Purtell. (Id. ¶ 36) In June 2012, D'Adamo and Purtell transferred Plaintiff from the 13th Precinct to the Anti-Crime Unit. (Id. ¶ 37) Plaintiff

---

[1]  The following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

complained about the transfer to Lieutenant Harrington – one of the supervisors of the Anti-Crime Unit – but Harrington advised Plaintiff to accept the transfer, because to do otherwise would be viewed as an insult to Chief Purtell and would damage Plaintiff's career. (Id. ¶ 38) Plaintiff then accepted the transfer. (Id.) As a result of this transfer, Plaintiff's income was further reduced. (Id. ¶ 39)

In June 2012, after his transfer to the Anti-Crime Unit, Plaintiff began working with Sergeant John Rajan. (Id. ¶ 40) Plaintiff claims that "Rajan made his dislike of and racist/discriminatory attitude/beliefs against Hispanics clear to Plaintiff[,] as . . . Rajan knew Plaintiff to be Hispanic/Latino." (Id. ¶ 41) Plaintiff further alleges that Rajan was friendly with senior NYPD officers and supervisors, and was known to do favors for them. (Id. ¶ 42) As a result, some NYPD supervisors would "turn[] a blind eye" to Rajan's misconduct. (Id.)

Sometime between June 2012 and April 2013, Rajan accessed Plaintiff's NYPD records – without Plaintiff's consent and against NYPD policy – and disclosed certain information contained in those records to others in the Anti-Crime Unit. (Id. ¶ 43)

Between June 2012 and April 2013, Plaintiff repeatedly complained "to the entire NYPD chain of command assigned to Patrol Borough Manhattan South" about Rajan having accessed his records, including Purtell, D'Adamo, Lieutenant Jesus Romero, Captain Thomas Traynor, and Inspector Paul Piekarski. (Id. ¶ 44) Plaintiff also repeatedly complained "to the . . . NYPD chain of command at Manhattan South" about:

Sergeant Rajan's history of excessive force, violent acts, conduct and/or behavior towards/against others including, but not limited to: violent/excessive force against other officers and against those citizens who Defendant Rajan stops, detains, arrests and/or imprisons; thereby causing them to sustain physical injury therefrom and thereby exposing the NYPD and its officers such as Plaintiff who work with Defendant Rajan to unnecessary and needless excessive force, brutality, assault, battery and other complaints being made for physical injuries being sustained at the hands of Defendant Rajan as well as for Defendant Rajan's

3

> violation of citizens' civil rights by, including and not limited to, targeting poor,
> Black/African American and/or Hispanic citizens.

(Id. ¶ 45) In making these complaints, Plaintiff requested that the NYPD conduct an
investigation of Rajan and his "official misconduct and unlawful/discriminatory actions, conduct
and behaviors, including his acts of violence and excessive force." (Id. ¶ 44)

On August 21, 2012, Plaintiff complained to Traynor about Rajan's history of
violent conduct and his improper accessing of Plaintiff's NYPD records. (Id. ¶ 47) In response,
Traynor told Plaintiff that Traynor had ordered Rajan to access Plaintiff's NYPD records. (Id. ¶
48) Plaintiff "believes that . . . Traynor [wa]s lying to Plaintiff . . . to protect and shield . . .
Rajan from disciplinary action." (Id. ¶ 49)

On February 21, 2013, during a meeting at Patrol Borough Manhattan South with
Purtell, Piekarski and Lieutenant Frank Basendello, Plaintiff repeated his complaints about
Rajan's history of violent conduct and improper accessing of Plaintiff's NYPD records. (Id. ¶
50)

On April 17, 2013, Plaintiff told Piekarski and D'Adamo that he did not feel safe
working with Rajan, given Rajan's history of violent conduct. (Id. ¶ 51) Plaintiff also stated that
Rajan had used excessive force against a detainee. (Id.)

No investigative or disciplinary action against Rajan was initiated in response to
Plaintiff's complaints. (Id. ¶¶ 44, 45, 46, 50)

On April 18, 2013, while Plaintiff was exiting Patrol Borough Manhattan South,
Rajan – without provocation by Plaintiff – assaulted Plaintiff. (Id. ¶ 53) Two other police
officers intervened to restrain Rajan. (Id.) After Rajan broke free from the officers' restraint,
Rajan told Plaintiff that "D'Adamo, Piekarski, Traynor, Romero and/or Purtell" had told Rajan
that Plaintiff had complained to them about Rajan's "unlawful/violent conduct, actions and

4

behavior." (Id.) Rajan said that he had attacked Plaintiff in retaliation for those complaints, and threatened that he would "get" Plaintiff again. (Id.)

On April 19, 2013, while Plaintiff was retrieving equipment from his locker at Patrol Borough Manhattan South, Rajan again assaulted Plaintiff. (Id. ¶ 57) Three other NYPD officers had to restrain Rajan and to stop him from choking Plaintiff. (Id. ¶ 58)

That same day, Plaintiff complained to "Purtell, D'Adamo, Traynor, Romero, Piekarski and/or the NYPD at large" about Rajan's assault. (Id. ¶ 61) In particular, Plaintiff complained to D'Adamo that Rajan had assaulted him, and that he was experiencing pain and injuries as a result. (Id.) Plaintiff was then transported to Bellevue Hospital for treatment. (Id. ¶ 62)

On April 20, 2013, Plaintiff met with Sergeant Benevolent Association's Manhattan North Delegate Sergeant Cliff Thieleke about the April 18, 2013 and April 19, 2013 incidents. (Id. ¶ 63) Plaintiff complained that Rajan had assaulted him on those days, and that no investigative or disciplinary action had been taken against Rajan despite Plaintiff's complaints. (Id. ¶ 64)

"In direct retaliation [for] Plaintiff's April 17, 2013, April 18, 2013 and April 19, 2013 complaints about Defendant Rajan," on April 20, 2013, NYPD personnel, "including, but not limited to . . . Purtell, Traynor, Romero, D'Adamo, Piekarski and/or Thieleke," made Plaintiff the subject of a GO 15 investigation.[2] (Id. ¶ 65) No disciplinary action was taken against Rajan. (Id. ¶ 68)

---

[2] "A GO–15 is an interview in connection with allegations of serious misconduct or corruption." Mullins v. City of New York, 626 F.3d 47, 50 (2d Cir. 2010).

5

Thieleke told Plaintiff not to tell anyone that Rajan had assaulted him, and warned that if Plaintiff disclosed that Rajan had assaulted him, Plaintiff would be suspended and arrested. (Id. ¶¶ 66-67) Plaintiff refused to lie, however. (Id. ¶ 68) In retaliation for Plaintiff's refusal to lie – and in an effort to protect Rajan – NYPD personnel, "including . . . Purtell, D'Adamo, Piekarski, [Deputy Chief] McNamara, [Captain Nicole] Papamichael, [Captain Deodat] Urprasad, [Lieutenant] Ariola, [Sergeant George] Ebrahim and/or Thieleke," placed Plaintiff on modified duty, and transferred him to a VIPER unit,[3] which caused him to lose overtime pay. (Id. ¶ 73) Plaintiff's badge and weapons – including those he lawfully possessed in his home – were taken away from him. (Id. ¶ 80)

Between April 19, 2013 and December 1, 2013, Plaintiff was on sick leave due to injuries Rajan had inflicted on him. (Id. ¶ 82) During this period, NYPD personnel visited Plaintiff's home and a surveillance unit was assigned to watch Plaintiff. (Id.)

On July 8, 2013, disciplinary charges were filed against Plaintiff for engaging in a "physical altercation" with Rajan. (Id. ¶ 80) Urprasad – a friend of Rajan – brought the charges against Plaintiff and performed the investigation, which should have been performed by the Internal Affairs Bureau.[4] (Id. ¶ 73)

Plaintiff resigned from the NYPD on December 1, 2013. (Id. ¶ 83)

---

[3] A "VIPER" unit is a Video Interactive Patrol Enhancement Response unit. Shine v. City of New York, No. 12 CV 8393 CM, 2013 WL 5231472, at *1 (S.D.N.Y. July 24, 2013).

[4] The NYPD's Internal Affairs Bureau "investigates claims of serious misconduct and corruption of members of the NYPD. . . ." Floyd v. City of New York, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010).

6

## DISCUSSION

## I.    MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case," however. Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515 (2002) (addressing motion to dismiss standard for Title VII discrimination claim)); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006) (per curiam) (applying Swierkiewicz to retaliation claims)). Instead, as the Swierkiewicz court explained, the "ordinary rules for assessing the sufficiency of a complaint" under Fed. R. Civ. P. 8(a)'s notice pleading standard apply. Swierkiewicz, 534 U.S. at 511.

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)). To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability

7

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's
liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557).  Where "the
allegations in a complaint, however true, could not raise a claim of entitlement to relief,"
Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from
conceivable to plausible, the[] complaint must be dismissed."  Id. at 570.  "As the Second Circuit
[has] observed, a complaint 'consisting of nothing more than naked assertions, and setting forth
no facts upon which a Court could find a violation of the Civil Rights Act, fails to state a claim
under [Rule] 12(b)(6).'"  Gregory v. Daly, 78 F. Supp. 2d 48, 49 (N.D.N.Y. 1999), aff'd in rel.
part, 243 F.3d 687 (2d Cir. 2001) (quoting Martin v. New York State Dep't of Mental Hygiene,
588 F.2d 371, 372 (2d Cir. 1978)).

## II.   CLAIMS AGAINST INDIVIDUAL DEFENDANTS

The Individual Defendants contend that the claims against them in the Amended
Complaint must be dismissed, because the Court previously dismissed all of Plaintiff's claims
against the Individual Defendants.  (Def. Br. (Dkt. No. 39) at 14-15[5])

Plaintiff filed the Complaint on October 24, 2014, alleging claims against each of
the Individual Defendants named in the Amended Complaint.  (See Dkt. No. 1)  The Complaint
was not served on any of the Individual Defendants within the 120-day period provided by Rule
4(m), however, see Fed. R. Civ. P. 4(m), and Defendants asked that claims against the Individual

---

[5] Citations in this Order reflect page numbers assigned by this District's Electronic Case Filing
(ECF) system.

Defendants be dismissed. (Feb. 27, 2015 Def. Ltr. (Dkt No. 7) at 2) In a March 4, 2015 letter to the Court, Plaintiff wrote that "based upon learning that service was not effectuated on the individual Defendants within 120 days, Plaintiff concedes dismissal." (March 4, 2015 Pltf. Ltr. (Dkt. No. 8) at 5) During a conference the next day, the Court confirmed with Plaintiff's counsel that he did not object to dismissal of the claims against the Individual Defendants. (Mar. 5, 2015 Tr. (Dkt. No. 18) at 2:14-3:14) Accordingly, on March 5, 2015, the Court entered an order dismissing all of Plaintiff's claims against the Individual Defendants. (See Dkt. No. 9)

When Plaintiff filed the Amended Complaint on March 20, 2015, however, Plaintiff asserted the same claims against the same Individual Defendants. (Dkt. No. 15) Plaintiff then served the Individual Defendants with the Amended Complaint. (See Affidavits of Service (Dkt. Nos. 20-34))

"The filing of an amended complaint . . . does not restart the 120 day period for service under Rule 4(m)." Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 607 (S.D.N.Y. 2012) (citing Cioce v. County of Westchester, No. 02–3604(HB), 2003 WL 21750052, at *3 (S.D.N.Y. July 28, 2003)); see Spiteri v. Russo, No. 12 CV 2780 MKB, 2012 WL 5422180, at *2 (E.D.N.Y. Nov. 6, 2012) ("Filing an amended complaint does not toll the time to serve a defendant named in the initial complaint." (citing Sikhs, 2012 WL 4328329, at *5; Harris v. Westchester Cnty. Med. Ctr., No. 08–CV–1128, 2010 WL 2674545, at *1 (S.D.N.Y. July 1, 2010))); Harris, 2010 WL 2674545, at *1 ("'[F]iling an amended complaint in itself does not toll the service period, thereby providing an additional 120 days for service[.]'" (alterations in Harris) (quoting 4B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1137 (3d ed.); citing Cioce, 2003 WL 21750052, at *3)).

9

Rather, where a defendant "was named in the original complaint[,] . . . the 120 day period beg[i]n[s] to run with the filing of the initial complaint." Spiteri, 2012 WL 5422180, at *2; see also Georgia ex rel. Saunders v. Mortgage Elec. Registration Sys., Inc., No. 1:10-CV-3419-TWT-RGV, 2011 WL 1335824 (N.D. Ga. Mar. 11, 2011), report and recommendation adopted sub nom. Georgia v. Mortgage Elec. Registration Sys., Inc., No. 1:10-CV-3419-TWT, 2011 WL 1322616, at * 5 (N.D. Ga. Apr. 6, 2011) ("'The 120–day time limit imposed by Rule 4(m) expires 120 days after the first complaint in which the defendant is named . . .' and 'does not restart each time a plaintiff files a new amended complaint.'" (quoting Rudolph v. UT Starcom, Inc., No. C 07–04578 SI, 2009 WL 248370, at *2 (N.D. Cal. Feb. 2, 2009))).

Here, Plaintiff's time to serve the Individual Defen0dants expired 120 days after the filing of the Complaint on October 24, 2014, and that time period was not renewed when Plaintiff filed the Amended Complaint on March 20, 2015. Service on the Individual Defendants in April of 2015 was therefore untimely. Accordingly, all claims against the Individual Defendants will be dismissed.

## III.   CLAIMS AGAINST THE NYPD

Defendants argue that "[a]ll of Plaintiff's claims against the NYPD should be dismissed because [the NYPD] is not a suable entity." (Def. Br. (Dkt. No. 39) at 15)

"[T]he NYPD is a non-suable agency of the City." Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (citing Wray v. City of New York, F. Supp. 2d 291, 303 (E.D.N.Y. 2004) (quoting N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."))); see Parra v. City of White Plains, 48 F. Supp. 3d 542, 547 (S.D.N.Y. 2014) ("Under New York law, a municipal

10

police department has no separate legal identity apart from the municipality that created it, and is thus a non-suable entity." (citing Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002))); Rodriguez v. City of New York, No. 10 Civ. 1849 PKC, 2011 WL 4344057, at *3 (S.D.N.Y. Sept. 7, 2011) ("As an agency of the City of New York . . . the NYPD is a non-suable entity." (citing Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008); East Coast Novelty Co., Inc. v. City of New York, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992))).

Since the NYPD is a non-suable entity, all claims against the NYPD will be dismissed.

## IV.   STATUTE OF LIMITATIONS

### A.   Title VII Claims

"'For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly unlawful employment practice.'" Ren Yuan Deng v. New York State Office of Mental Health, No. 13 CIV. 6801 ALC, 2015 WL 221046, at *10 (S.D.N.Y. Jan. 15, 2015) (quoting Baroor v. N.Y.C. Dep't of Educ., 362 F. App'x 157, 159 (2d Cir. 2010)). Accordingly, "a plaintiff may not assert claims based on events that took place more than 300 days before the submission of an administrative charge . . . to the EEOC," because such claims are time-barred. Lomako v. New York Inst. Of Tech., No. 09 CIV 6066 HB, 2010 WL 1915041, at *4 (S.D.N.Y. May 12, 2010), aff'd, 440 F. App'x 1 (2d Cir. 2011).

Here, Plaintiff filed a complaint with the EEOC on April 25, 2014. (See Am. Cmplt. (Dkt. No. 15), Ex. A (EEOC Cmplt.) at 2) Therefore, any Title VII claims based on incidents or conduct that occurred prior to June 29, 2013 are untimely.

11

Plaintiff contends, however, that (1) claims based on incidents that occurred before June 29, 2013 are not time-barred insofar as they are "reasonably related" to timely conduct alleged in the EEOC complaint; and (2) his "hostile work environment claims of discrimination and retaliation are subject to the continuing violation doctrine," under which otherwise untimely incidents are actionable as part of a "continuing hostile work environment." (Pltf. Br. (Dkt. No. 41) at 18-19)

### 1.   **"Reasonably Related" Doctrine**

Plaintiff contends that claims premised on pre-June 29, 2013 conduct are not time-barred, because the "unlawful acts/conduct/omissions by Defendants against Plaintiff [that] occurred from 2010 through and into 2013" are "reasonably related to the conduct alleged in the EEOC Complaint [that] is actionable." (Pltf. Br. (Dkt. No. 41) at 18) Defendants argue, however, that "[t]o the extent that Plaintiff argues that his belated claims are actionable because they are 'reasonably related' to conduct within the limitations period, he is mistaken, as he conflates principles concerning administrative exhaustion and timeliness." (Def. Reply Br. (Dkt. No. 40) at 8)

"Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC. . . .'" Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015) (quoting Williams, 458 F.3d at 69). "Claims that were not so presented may form the basis of a Title VII suit only to the extent they are 'reasonably related to the claim filed with the agency.'" Febrianti v. Worldwide, No. 15-CV-0635 (JMF), 2016 WL 502027, at *5 (S.D.N.Y. Feb. 8, 2016) (quoting Littlejohn, 795 F.3d at 322); see Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir. 2008) ("Although the general rule is that a Title VII plaintiff may not pursue an unexhausted claim, we will consider all claims to the

12

extent they are 'reasonably related' to those that the plaintiff did assert in a timely EEO charge." (citing Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001))). Thus, the "reasonably related" doctrine is an "exception to the [administrative] exhaustion requirement." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003); see Mathirampuzha, 548 F.3d at 76 ("The [administrative] exhaustion requirement is relaxed under the 'reasonably related' doctrine. . . .").

In arguing that the "reasonably related" doctrine makes claims based on pre-June 29, 2013 conduct timely, Plaintiff misconstrues the purpose of that doctrine. The "reasonably related" doctrine does not toll the statute of limitations, nor does it make timely claims that would otherwise be untimely. Instead, the "reasonably related" doctrine relaxes administrative exhaustion requirements to the extent that claims not presented in an EEOC complaint can nonetheless be the basis for a lawsuit if "they are 'reasonably related' to [claims] that the plaintiff did assert in a timely EEO charge." Mathirampuzha, 548 F.3d at 75. In sum, claims based on incidents and conduct that occurred more than 300 days before Plaintiff filed his EEOC complaint are time-barred even if they are "reasonably related" to timely claims alleged in Plaintiff's EEOC complaint. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."; rejecting proposition that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are . . . sufficiently related to that act may also be considered").

13

## 2.     "Continuing Violation" Doctrine

Plaintiff also argues that "Plaintiff's hostile work environment claims of discrimination and retaliation are subject to the continuing violation doctrine." (Pltf. Br. (Dkt. No. 41) at 19)

In National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), the Supreme Court explained the proper application of the "continuing violation" doctrine. The Supreme Court found that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the [300-day] statutory time period." Id. at 105. The Court further stated that "[a] discrete retaliatory or discriminatory act occurred on the day that it happened. A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." Id. at 110 (internal quotation marks omitted); see id. at 122 ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period [of] . . . 300 days. . . ."). The Court noted that individual "incident[s] of discrimination and . . . retaliatory adverse employment decision[s]" – such as "termination, failure to promote, denial of transfer, or refusal to hire" – constitute "discrete acts . . . [and] are easy to identify." Id. at 114.

The Supreme Court further stated, however, that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Id. at 115. Accordingly, the Court found that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105. Therefore, for a hostile work

14

environment claim to be timely, "the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." Id. at 118.

Here, Plaintiff pleads facts concerning numerous alleged acts of discrimination and retaliation that occurred before June 29, 2013, including that: (1) in 2010, Danberry falsely accused Plaintiff of not following search warrant protocols, filed a false disciplinary charge against him, and transferred him to the 13th Precinct as retaliation for complaining about Danberry and being found "not guilty" on the disciplinary charge (Am. Cmplt. (Dkt. No. 15) ¶ 22-29); (2) in December 2011, D'Adamo attempted to force Plaintiff to "voluntarily" transfer to the Anti-Crime Unit, and – in retaliation for Plaintiff refusing the "voluntary" transfer – complained about Plaintiff to Purtell (id. ¶¶ 34-36); (3) in June 2012, D'Adamo and Purtell transferred Plaintiff to the Anti-Crime Unit (id. ¶¶ 37-39); (4) between June 2012 and April 2013, Rajan accessed Plaintiff's NYPD records and disclosed information contained in those records to others in the Anti-Crime Unit (id. ¶ 43); (5) on April 18 and 19, 2013, Rajan physically assaulted Plaintiff in retaliation for complaints that Plaintiff made about him to NYPD supervisors (id. ¶ 53-58); and (6) on April 20, 2013, NYPD supervisors made Plaintiff the subject of a GO 15 investigation in retaliation for Plaintiff making complaints about having been assaulted by Rajan. (Id. ¶ 65)

To the extent that Plaintiff pleads these pre-June 29, 2013 incidents as distinct acts of retaliation and discrimination in violation of Title VII, his claims are time-barred. See Nat'l R.R. Passenger Corp., 536 U.S. at 105, 122 ("[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period [of] . . . 300 days. . . ."; "[Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.").

15

Plaintiff's discrimination and retaliation claims are also based on conduct that took place after June 29, 2013, however. For example, Plaintiff alleges that (1) from April 19, 2013 until December 1, 2013, NYPD personnel visited his home and assigned a surveillance unit to watch him while he was out on sick leave (Am. Cmplt. (Dkt. No. 15) ¶ 82); (2) on July 8, 2013, disciplinary charges were filed against him for engaging in a physical altercation with Rajan (id. ¶ 80); and (3) on December 1, 2013, he was forced to resign from the NYPD. (Id. ¶ 83)

Because at least some "act[s] contributing to [the alleged] hostile [work] environment [took] place within the statutory time period," this Court can consider the pre-June 29, 2013 conduct as part of Plaintiff's hostile work environment claim. Nat'l R.R. Passenger Corp., 536 U.S. at 105 ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").

## V.    MONELL LIABILITY

In the Amended Complaint, Plaintiff asserts a claim for municipal liability under Section 1983, based on alleged violations of the Fourth, Eighth, and Fourteenth Amendments and the New York State Constitution.[6] (Am. Cmplt. (Dkt. No. 15-1) ¶¶ 231, 233, 240)

---

[6] Plaintiff pleads numerous Section 1983 claims against the City in addition to his Monell claim. These other Section 1983 claims are styled as claims for Fourth Amendment violations (Am. Cmplt. (Dkt. No. 15-1) ¶¶ 180-83); for "causing . . . Plaintiff . . . to be subjected" to violations of Section 1983 (id. ¶ 189); for conspiracy (id. ¶ 211); for supervisory liability (id. ¶¶ 215-24); for failing to intercede (id. ¶¶ 247-50); and for Eighth Amendment violations. (Id. ¶¶ 192-209) All of these claims against the City require Plaintiff to establish Monell liability, however. See, e.g., Woodhouse v. City of Mount Vernon, No. 113CV00189ALCHBP, 2016 WL 354896, at *6 (S.D.N.Y. Jan. 27, 2016) ("claims of supervisory liability" under Section 1983 alleged against a municipality "are analyzed under Monell."); K.D. ex rel. Duncan v. White Plains Sch. Dist., 921

Defendants argue that "Plaintiff does not plausibly allege any basis to support municipal

liability" under Section 1983, because he "offers only conclusory allegations of a . . . policy,

practice and/or custom . . . unsupported by any factual detail." (Def. Br. (Dkt. No. 39) at 28, 30)

## A.    **Applicable Law**

"[A] municipality cannot be held liable [under Section 1983] solely because it

employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a

respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)

(emphasis in Monell). "Instead, it is when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury that the government as an entity is responsible under § 1983."

Id., 436 U.S. at 694. The Second Circuit has explained that a plaintiff

> must first prove the existence of a municipal policy or custom in order to show
> that the municipality took some action that caused his injuries beyond merely
> employing the misbehaving officer[s]. Second, the plaintiff must establish a
> causal connection – an "affirmative link" – between the policy and the deprivation
> of his constitutional rights.

---

F. Supp. 2d 197, 205 (S.D.N.Y. 2013) (dismissing Section 1983 failure to intercede claim against
municipality "because of the failure to adequately allege a Monell claim"); Bradley v. City of
New York, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *4 (E.D.N.Y. June 18, 2009)
(dismissing conspiracy claim under Section 1983 where "even if Plaintiff's Complaint could be
read to properly allege the existence of a conspiracy under Section 1983, Plaintiff has not
provided sufficient allegations of municipal liability" by showing "a municipal custom or
policy." (citing Monell, 436 U.S. at 691)).

Plaintiff also asserts a discrimination claim against the City under 42 U.S.C. § 1981. (Am.
Cmplt. (Dkt. No. 15) ¶ 119) "[W]hen the defendant sued for discrimination in violation of
§ 1981 is a municipality . . . , § 1983 supplies the exclusive remedy for violations of rights
guaranteed under § 1981." Hill v. City of New York, No. 13 CV 6147 PKC JO, 2015 WL
5719656, at *8 (E.D.N.Y. Sept. 28, 2015) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701,
733–34 (1989); Bermudez, 783 F. Supp. 2d at 576). Accordingly, "Plaintiff's 'employment
discrimination claims under § 1981 are subsumed within [his] claims under § 1983, which is the
vehicle for enforcing those rights.'" Geras v. Hempstead Union Free Sch. Dist., No. 13-CV-
5094(ADS)(AYS), 2015 WL 9182980, at *18 (E.D.N.Y. Dec. 17, 2015) (quoting McKinney v.
Bennett, 06–cv–13486, 2009 WL 2981922, at *5 n.1 (S.D.N.Y. Sept. 16, 2009)).

Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). "'In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a "policy" or "custom."'" Triano v. Town of Harrison, New York, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting Davis v. City of New York, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), aff'd, 75 F. App'x. 827 (2d Cir. 2003)).

"'[T]he word "policy" generally implies a course of action consciously chosen from among various alternatives.'" Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)). "Policy, in the Monell sense, may of course be made by the municipality's legislative body, but it also may be made by a municipal official 'possess[ing] final authority to establish a municipal policy with respect to the action ordered.'" Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

"'A municipal "custom," on the other hand, need not receive formal approval by the appropriate decisionmaker. . . .'" Triano, 895 F. Supp. 2d at 531 (quoting Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)). "Instead, 'an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.'" Id. (quoting Bd. Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997)).

"[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details," however. Triano, 895 F. Supp. 2d at 535 (citing Moore v. City of New York, No. 08 Civ. 8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010)). "[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or

18

custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "'[A]

conclusory, boilerplate assertion of a municipal policy or custom [is] insufficient to survive a

motion to dismiss.'" Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011)

(quoting Santiago v. City of New York, No. 09 Civ. 0856 (BMC), 2009 WL 2734667, at *7

(E.D.N.Y. Aug. 18, 2009) and citing Smith v. City of New York, 290 F. Supp. 2d 317, 322

(E.D.N.Y. 2003)); see also Brodeur v. City of New York, No. 99 Civ. 661 (WHP), 2002 WL

424688, at *6 (S.D.N.Y. Mar. 18, 2002) (Monell claim dismissed where complaint asserted a

policy but contained no "specific factual allegations sufficient to establish that a municipal

policy or custom caused [the plaintiff's] alleged injury").

## B.    Analysis

### 1.    Constitutional Violations

Here, Plaintiff asserts Section 1983 claims based on violations of the Fourth,

Eighth, and Fourteenth Amendments.[7]

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides

'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S.

386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Thus, in

---

[7] Plaintiff also mistakenly asserts a Section 1983 claim under the New York state constitution. "In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." Sykes v. James, 13 F.3d 515, 518 (2d Cir. 1993) (emphasis added) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rand v. Perales, 737 F.2d 257, 260 (2d Cir. 1984)). "[Section] 1983 does not apply to the deprivation of rights . . . created by . . . state constitutions." Jermosen v. Coughlin, No. 87 CIV. 6267 (RJW), 1993 WL 267357, at *5 n.2 (S.D.N.Y. July 9, 1993), aff'd, 41 F.3d 1501 (2d Cir. 1994) (citing Stiltner v. Rhay, 322 F.2d 314, 315 (9th Cir. 1963), cert. denied, 376 U.S. 920 (1964); Newcomer v. Coleman, 323 F.Supp. 1363, 1365 n.4 (D. Conn. 1970)). Accordingly, Plaintiff cannot allege a valid Section 1983 claim based on violations of his rights under the New York state constitution. See id. ("plaintiff asserts that he was deprived of his rights under the New York state constitution, in violation of § 1983"; "[t]his claim must be rejected," because Section 1983 does not create a cause of action for violations of state constitutional rights).

19

addressing a Section 1983 claim, the "analysis begins by identifying the specific constitutional right allegedly infringed. . . ." Id. (citing Baker, 443 U.S. at 140). "In the absence of an underlying constitutional violation, a plaintiff cannot state a claim . . . under Monell." Dilworth v. Goldberg, No. 10-CV-2224 JMF, 2014 WL 3798631, at *11 (S.D.N.Y. Aug. 1, 2014) (citing Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011)). Here, Plaintiff's Section 1983 claims are based on alleged violations of the Fourth and Eighth Amendments, as applied to the states through the Fourteenth Amendment. Plaintiff has not stated a Section 1983 claim under either the Fourth Amendment or the Eighth Amendment, however.

"The Fourth Amendment protects the right to be free from 'unreasonable searches and seizures,'" Davis v. United States, 564 U.S. 229, 229 (2011) (quoting U.S. Const. amend. IV), and therefore applies to "claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." Graham, 490 U.S. at 395. "In order to state a claim for excessive force under the Fourth Amendment, a plaintiff must show that he was subject to a search or seizure. . . ." Reeves v. Akinwunmi, No. 07-CV-4964 (RJD), 2008 WL 558710, at *2 (E.D.N.Y. Mar. 3, 2008) (citing Graham, 490 U.S. at 395). Here, the Amended Complaint pleads no facts suggesting that Plaintiff was subject to a law enforcement search or seizure. Accordingly, Plaintiff has not stated a claim under Section 1983 based on a Fourth Amendment violation. See Tierney v. Davidson, 133 F.3d 189, 199 (2d Cir. 1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these claims fall outside the Fourth Amendment protections. . . .").

Similarly, "the Eighth Amendment's protection does not apply 'until after conviction and sentence.'" United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting Graham, 490 U.S. at 392 n.6). Here, the Amended Complaint does not plead facts suggesting

20

that Plaintiff was convicted or sentenced. Accordingly, Plaintiff has not stated a claim under

Section 1983 based on an Eighth Amendment violations.

Because Plaintiff has not pleaded facts sufficient to make out a constitutional

deprivation, his Monell claim fails. Even if Plaintiff had pleaded facts sufficient to make out a

constitutional deprivation, however, his Monell claim would still fail, because he has not pleaded

facts sufficient to demonstrate that any constitutional deprivation he suffered was due to a

municipal policy, practice, or custom.

### 2.   Municipal Policy, Custom or Practice

Here, Plaintiff alleges that

[i]t was the policy, practice and/or custom of Defendant[] the City of New York
. . . to inadequately and/or improperly investigate the complaints of citizens,
including Plaintiff herein as a fellow NYPD officer, about/of/regarding abuse of
authority, abuse of power, abuse of trust, abuse of position, false departmental
charges, false departmental prosecutions, assault, battery, violence and the use of
excessive force by/of the Defendants' officers including and in particular, of/by
Defendant Rajan, and/or of the efforts by other NYPD officers/supervisors to fail
to report, fail to investigate, fail to discipline and otherwise to cover up said
unlawful acts of Defendant Rajan, and/or the efforts of/by the Defendants'
officers/supervisors to accuse and charge the victim of such unlawful acts in
further [ ]effort[s] to cover up/nullify the unlawful acts committed by the police
officers including and in particular, those unlawful acts committed by Defendant[ ]
Rajan.

(Am. Cmplt. (Dkt. No. 15-1) ¶ 227[8])

Plaintiff further alleges that

[i]t was the policy, practice and/or custom of Defendant[] the City of New York
. . . to inadequately and/or improperly screen, hire, retain, train, supervise and
manage police officers who are known, or with reasonable diligence should be
known, to possess violent propensity, the propensity to commit official
misconduct, the propensity to abuse their power, position, trust and/or authority as
a New York City Police Officer, the propensity to falsely charge/prosecute and/or
the propensity and/or actuality to unlawfully assault, batter, choke, strike, hit, beat

---

[8] The Amended Complaint contains two paragraphs numbered "227." (See Am. Cmplt. (Dkt.
No. 15-1) at 33-34) This quotation is from the first such paragraph.

21

and otherwise unlawfully use excessive force against citizens like Plaintiff herein, the propensity to violate the [s]tate and [c]onstitutional [r]ights of citizens, the propensity to engage in excessive punishment/excessive force against citizens, the propensity to ignore the medical needs of those they have injured, the propensity to subject citizens to cruel and inhumane punishment/excessive force, the propensity to harass citizens, the propensity to retaliate against citizens, the propensity to cover up unlawful acts of fellow NYPD officers and other acts of abuse of power and authority/official misconduct all while acting under the color of law.

(Id. ¶ 228)

Defendants argue that "Plaintiff offers only conclusory allegations of a

discriminatory . . . policy, practice and/or custom . . . unsupported by any factual detail." (Def. Br. (Dkt. No. 39) at 30) The Court agrees.

Plaintiff has not pled facts demonstrating that the City has a municipal policy or

custom that caused him to be deprived of his constitutional rights. Plaintiff's conclusory

allegations in this regard are plainly insufficient. See Triano, 895 F. Supp. 2d at 533, 541

(granting motion to dismiss where plaintiff identified several "systematic flaws" in police

department without providing any factual support); see also In re Dayton, 786 F. Supp. 2d 809,

822 (S.D.N.Y. 2011) (finding insufficient allegations that municipality "negligently failed to

properly administer its agencies[,] departments[,] personnel[,] and the like in regard to the

maintenance, design, supervision and control over those accused and detained. . . ." (alterations

in Dayton)); Abreu v. City of New York, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009) (granting

the City's motion to dismiss where plaintiff offered no facts supporting his claim that it had

failed to adequately train and supervise Department of Correction officers).

Moreover, Plaintiff's allegations concerning his encounters with Rajan are not

sufficient to demonstrate a municipal policy or custom. "'[I]solated acts by non-policymaking

municipal employees are generally not sufficient' to establish municipal liability." Tchatat v.

22

City of New York, No. 14 CIV. 2385 LGS, 2015 WL 5091197, at \*9 (S.D.N.Y. Aug. 28, 2015),
on reconsideration in part, No. 14 CIV. 2385 LGS, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015)
(quoting Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012)); see DeCarlo v. Fry, 141
F.3d 56, 61 (2d Cir. 1998) ("'[A] single incident alleged in a complaint, especially if it involved
only actors below the policy-making level, does not suffice to show a municipal policy.'"
(quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991))); Sforza v.
City of New York, No. 07 Civ. 6122 (DLC), 2009 WL 857496, at \*11 (S.D.N.Y. Mar. 31, 2009)
("Monell liability may spring from a single violation only where the conduct causing the
violation was undertaken pursuant to a municipality-wide custom, practice, or procedure."
(citing DiSorbo v. Hoy, 343 F.3d 172, 180-81 (2d Cir. 2003); Mandell v. County of Suffolk, 316
F.3d 368, 385 (2d Cir. 2003))); see also Triano, 895 F. Supp. 2d at 538 (granting municipality's
motion to dismiss where the only facts pled in the complaint related to plaintiff's arrest).

Finally, Plaintiff has not demonstrated a causal link between his injuries and any
alleged municipal policy. While "[i]t is well established that a plaintiff may establish [the]
required causal link [between a municipal policy or custom and the alleged constitutional
deprivation] by showing that a defendant was deliberately indifferent to the training, supervision,
or discipline of its employees," Abreu, 657 F. Supp. 2d at 360 (citing Amnesty Am. v. Town of
W. Hartford, 361 F.3d 113, 127-130 (2d Cir. 2004)), a municipality may be liable under a failure
to train claim "only where the need to act is so obvious, and the inadequacy of current practices
so likely to result in a deprivation of federal rights, that the municipality or official can be found
deliberately indifferent to the need." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)
(citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)). "'[D]eliberate indifference' is
a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

obvious consequence of his action." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)

(alteration in Connick) (quoting Bryan Cnty, 520 U.S. at 410). "Thus, when city policymakers

are on actual or constructive notice that a particular omission in their training program causes

city employees to violate citizens' constitutional rights, the city may be deemed deliberately

indifferent if the policymakers choose to retain that program." Id. (citing Bryan Cnty., 520 U.S.

at 407).

　　　　　　　Plaintiff has pled no facts demonstrating a need so obvious as to put the City on

notice, however. Instead, Plaintiff makes boilerplate assertions that the City

> ha[s] been on notice for years that harassment, assault, battery, official
> misconduct, abuse of power, abuse of trust, abuse of authority, use of excessive
> force, false departmental charges/prosecution, retaliation, violence, assault,
> battery, failure to investigate complaints, failure to report, failure to discipline and
> to otherwise cover up unlawful police conduct, discrimination and/or violations of
> citizens' [s]tate and [f]ederal [c]onstitutional [r]ights [were] widespread prior to
> the wrong that was visited upon the Plaintiff herein and that particular reforms
> need to be implemented.

(Am. Cmplt. (Dkt. No. 15-1) ¶ 230) Such conclusory allegations are insufficient. See Triano,

895 F. Supp. 2d at 539 (granting motion to dismiss where plaintiff failed to allege facts sufficient

"to support an inference that the Town was 'on notice' of misconduct by its police officers, but

failed to act, such that the Town exhibited deliberate indifference to the constitutional rights of

its citizens"); Hendrix v. City of New York, No. 12 Civ. 5011 (ILG) (CLP), 2013 WL 6835168,

at *7 (E.D.N.Y. Dec. 20, 2013) (dismissing Section 1983 failure to train claim where the sole

supporting factual allegation was that the City "failed to take steps necessary to discipline, train,

supervise or otherwise correct the improper, illegal conduct of the individual defendants in this

and in similar cases involving misconduct").

　　　　　　　Because Plaintiff has not pled facts demonstrating that the City (1) has a custom

or policy that caused him to suffer a constitutional deprivation, or (2) was on notice that its

24

police officers were engaged in conduct causing such constitutional deprivations, Plaintiff's

municipal liability claims against the City will be dismissed.

## VI.    TITLE VII

Plaintiff alleges that Defendants subjected Plaintiff to a "hostile . . . work

environment . . . because of his race, color and/or national origin, and in retaliation for exercising

his right to engage in the protected activity of registering complaints about the workplace."

(Am. Cmplt. (Dkt. No. 15) ¶ 119)  Defendants contend, however, that Plaintiff has not stated a

claim for hostile work environment under Title VII because he has "not plausibly allege[d] that

any purportedly hostile actions took place 'because of' his protected characteristic[s]."  (Def. Br.

(Dkt. No. 39) at 27)

### A.    Applicable Law

Under Title VII,

> [t]o state a claim for a hostile work environment . . . a plaintiff must plead facts
> that would tend to show that the complained of conduct: (1) "is objectively
> severe or pervasive – that is, . . . creates an environment that a reasonable person
> would find hostile or abusive"; (2) creates an environment "that the plaintiff
> subjectively perceives as hostile or abusive"; and (3) "creates such an
> environment because of the plaintiff's [protected characteristic]."

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (emphasis added) (quoting Gregory v. Daly,

243 F.3d 687, 691-92 (2d Cir. 2001)).

"'It is axiomatic that mistreatment at work . . . through subjection to a hostile

environment . . . is actionable under Title VII only when it occurs because of an employee's . . .

protected characteristic.'"  DeLaurencio v. Brooklyn Children's Ctr., Superintendent, 111 F.

Supp. 3d 239, 248 (E.D.N.Y. 2015) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.

2001)).  "Thus, to state a claim [for hostile work environment], at a minimum, a plaintiff must

allege facts that suggest that the complained-of conduct was motived by [prohibited] animus."

Id. (citing Patane, 508 F.3d at 112 & n.3; Ford v. New York City Dep't of Mental Health & Hygiene, 545 F. Supp. 2d 377, 393 (S.D.N.Y. 2008))). "Without alleging . . . discrimination on the basis of [a protected characteristic], Plaintiff cannot state a claim under Title VII, no matter how heinous the conduct alleged." Zick v. Waterfront Comm'n of New York Harbor, No. 11 CIV. 5093 CM, 2012 WL 4785703, at *7 (S.D.N.Y. Oct. 4, 2012); see Brightman v. Prison Health Serv., Inc., No. 05CV3820(SLT)(VVP), 2007 WL 1029031, at *6 (E.D.N.Y. Mar. 30, 2007) ("'Hostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable.'" (quoting Nakis v. Potter, No. 01-10047, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004))).

## B.    Analysis

### 1.    Hostile Work Environment Based on Race, Color, Ethnicity and National Origin Discrimination

Plaintiff alleges that the hostile work environment he experienced was the product of discriminatory animus based on his race, color, ethnicity, and national origin. (Am. Cmplt. (Dkt. No. 15) ¶¶ 119, 125) Defendants contend, however, that "[t]he Amended Complaint . . . contains absolutely no factual allegation[s] to support a claim" that any of Defendants' actions were based on Plaintiff's race, color, ethnicity, or national origin. (Def. Br. (Dkt. No. 39) at 19)

In order to state a claim for hostile work environment based on discriminatory animus, a plaintiff must "adequately plead a causal connection between his protected status and the alleged hostile work environment." De La Pena v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 418 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014) (dismissing hostile work environment claim where the facts pleaded in the complaint "do not raise a plausible inference of discrimination based on the Plaintiff's protected characteristics, nor do they establish that any adverse action was taken based on such characteristics"); see Gregory v. Daly, 243 F.3d 687, 694

26

(2d Cir. 2001) (to survive a motion to dismiss, plaintiff must allege "factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of [his] [protected characteristic]." (emphasis added) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998))); Briante v. Longwood Cent. Sch. Dist., No. 15CV3200DRHGRB, 2016 WL 1056569, at *4 (E.D.N.Y. Mar. 16, 2016) (a "hostile work environment claim is properly dismissed [when the] plaintiff has failed to allege sufficient facts to support [the inference] that the conduct giving rise to the alleged hostile work environment occurred 'because of [his] membership in a protected class'" (quoting Ventimiglia v. Hustedt Chevrolet, 2009 WL 803477, at * 6 (E.D.N.Y. Mar, 25, 2009))).

Here, Plaintiff alleges that Rajan "made his dislike of and racist/discriminatory attitudes/beliefs against Hispanics/Latinos clear to Plaintiff." (Am. Cmplt. (Dkt. No. 15) ¶ 41) Similarly, Plaintiff alleges that "Rajan and Urprasad . . . had previously made it known that they do not like Hispanics/Latinos including Plaintiff herein." (Id. ¶ 60) The Amended Complaint contains no factual allegations that support these assertions, however. Such bald statements – without any supporting facts – are too conclusory to permit an inference of discriminatory animus. See Garcia v. Bill Me Later, Inc., No. 13-CV-8701 RJS, 2015 WL 4578613, at *3 (S.D.N.Y. July 28, 2015) (plaintiff alleged that the defendant's racial animus "'was clearly expressed by . . . acts, inaction, behavior, racial epithets and ethnically insulting remarks, and offensive touching'"; court concluded that these "conclusory assertions" were not sufficient to permit the complaint to survive a motion to dismiss, noting that plaintiff "pl[ed] no facts whatsoever to support [the alleged] 'clear expression'"); DeLaurencio v. Brooklyn Children's Ctr., Superintendent, 111 F. Supp. 3d 239, 250 (E.D.N.Y. 2015) (hostile work environment claim dismissed where plaintiff's allegations that co-worker had discriminatory animus were "not

27

supported by <u>factual</u> allegations." (emphasis in <u>DeLaurencio</u>)); <u>Alvarez v. Rosa</u>, No. 11 CIV. 3818 KBF, 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (dismissing discrimination claim where plaintiff did not allege "particular conduct or remarks . . . that could be viewed as reflecting discriminatory animus.").

   The 151-page Amended Complaint – which names sixteen defendants and addresses conduct over a four-year period taking place at three or more NYPD commands – contains only one factual allegation that references Plaintiff's membership in a protected group: Plaintiff claims that before he was transferred out of the Intelligence Division in 2010, D'Adamo "told [him] that Plaintiff was a 'fictitious Hispanic' who did not speak Spanish fluently." (Am. Cmplt. (Dkt. No. 15) ¶ 79) Such stray remarks, standing alone, are insufficient to make out a hostile work environment claim. See <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 223 (2d Cir. 2004) ("[O]ffhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 75 (2d Cir. 2001) (same); <u>White v. New York State Dept of Corr. Servs. & Cmty. Supervision</u>, No. 14 CV 10271 (VB), 2016 WL 1028009, at *1 (S.D.N.Y. Mar. 14, 2016) (granting motion to dismiss hostile work environment claim where plaintiff was called a "'fake Rican' because [he] is black but speaks Spanish"); <u>Rivera v. Brooklyn Hosp. Med. Ctr.</u>, 28 F. Supp. 3d 159, 163 (E.D.N.Y. 2014) (granting motion to dismiss where "[t]here is only one remark that referenced [plaintiff's] ethnic origin in the entirety of his hostile work environment allegations; that is the classic 'stray remark' which, standing alone, will not support a discrimination . . . claim" (footnote omitted) (citing <u>Henry v. Wyeth Pharmaceuticals, Inc.</u>, 616 F.3d 134, 149 (2d Cir. 2010))); <u>Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.</u>, No. 10 CIV. 8486 GBD THK, 2011 WL 7178736, at *12 (S.D.N.Y. Nov. 10, 2011), <u>report and</u>

recommendation adopted, No. 10 CIV. 8486 GBD THK, 2012 WL 406915 (S.D.N.Y. Feb. 9,

2012), aff'd, No. 13-4071-CV, 2016 WL 860063 (2d Cir. Mar. 7, 2016) (dismissing hostile work

environment claim where the complaint contained "only one alleged comment that could be

related to Plaintiff's national origin"); Ximines v. George Wingate High Sch., No. 05CV1214

(ILG), 2006 WL 2086483, at *8 (E.D.N.Y. July 25, 2006), aff'd in rel. part, 516 F.3d 156 (2d

Cir. 2008) (granting motion to dismiss where complaint contained only one remark referencing

plaintiff's protected characteristic; "single age-related comment alleged by Plaintiff . . . [does

not] warrant an inference of discriminatory intent").

            In addition to these allegations concerning Rajan, Urpasad and D'Adamo, the

Amended Complaint contains a number of non-specific and boilerplate assertions of

discriminatory animus. Plaintiff states, for example, that "Defendants . . . discriminated in the

workplace against [him] because of his race, color and/or national origin" (Am. Cmplt. (Dkt. No.

15) ¶ 123); that Defendants committed "hostile/discriminatory conduct against [him]" (id. ¶ 65);

and that Defendants "unlawfully discriminat[ed] against [him] because of his race [and] national

origin/ethnicity." (Id. ¶ 75)  Such conclusory assertions are not sufficient to plead discriminatory

intent. See, e.g., Rolle v. Educ. Bus Transp., Inc., No. CV 13-1729 SJF AKT, 2014 WL

4662256, at *6 (E.D.N.Y. Aug. 8, 2014), report and recommendation adopted, No. 13-CV-1729

SJF AKT, 2014 WL 4662267 (E.D.N.Y. Sept. 17, 2014) ("Plaintiff's singular recitation of the

word 'discrimination' in [his] Complaint constitutes a conclusory allegation, which the Supreme

Court has held facially insufficient to survive a Rule 12(b)(6) motion." (citing Leon v. Dep't of

Educ., 16 F. Supp. 3d 199-200 (E.D.N.Y. 2014), aff'd in part, vacated in part sub nom. Leon v.

New York City Dep't of Educ., 612 F. App'x 632 (2d Cir. 2015)); Manolov v. Borough of

Manhattan Cmty. Coll., 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) ("conclusory allegations of

discrimination are insufficient" to survive a motion to dismiss); Reid v. Hebrew Home for the Age, No. 11 CIV. 1408 GBD GWG, 2012 WL 698135, at *2 (S.D.N.Y. Mar. 5, 2012) ("Plaintiff merely alleges that Defendant's acts were taken 'because of [his] race.' This conclusory statement without more is insufficient to support a race discrimination claim.").

To the extent that Plaintiff alleges disparate treatment, his allegations are likewise conclusory. Plaintiff states, for example, that "Defendants . . . do not treat Caucasian and/or non-Latino, non-Hispanic and/or non-Spanish speaking police officers, similarly situated as Plaintiff, as they treated . . . Plaintiff herein." (Am. Cmplt. (Dkt. No. 15) ¶ 124) "[S]imply stating that one was treated differently than 'similarly situated co-workers' is insufficient to withstand dismissal," however. Meyer v. William Floyd Union Free Sch. Dist., No. 07-CV-2524 JS ETB, 2008 WL 4415271, at *6 (E.D.N.Y. Sept. 24, 2008); see Sank v. City Univ. of New York, No. 10 CIV. 4975, 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011) ("conclusory assertions of differential treatment do not permit a plausible inference of . . . discrimination.").

In sum, Plaintiff has not pled facts demonstrating that the conduct about which he complains was motivated by discriminatory intent. Accordingly, he has not stated a claim for hostile work environment based on race, color, ethnicity, or national origin discrimination. See Briante, 2016 WL 1056569, at *4 ("[T]he hostile work environment claim is properly dismissed because plaintiff has failed to allege sufficient facts to support that the conduct giving rise to the alleged hostile work environment occurred 'because of [his] membership in a protected class.'" (quoting Ventimiglia v. Hustedt Chevrolet, 2009 WL 803477, at * 6 (E.D.N.Y. Mar, 25, 2009))).

## 2.     Hostile Work Environment Based on Retaliation

Plaintiff further alleges that he was subjected to a hostile work environment in "retaliation for . . . exercising his right to engage in the protected activity of registering

complaints about the workplace, including but not limited to Plaintiff's complaints about the violence and violent propensity/conduct of Defendant Rajan and about Defendant Rajan's physical and criminal assault/excessive force against Plaintiff." (Am. Cmplt. (Dkt. No. 15) ¶ 119) Defendants argue that Plaintiff has not stated a claim for Title VII retaliation, however, because he has not shown "that any action was caused by, even in part, his engagement in protected activity." (Def. Br. (Dkt. No. 39) at 24)

For purposes of a hostile work environment retaliation claim, "hostility [is] based on a prohibited factor" when it is driven by "retaliatory motive." Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir. 2003) To state a claim under Title VII based on retaliatory animus, "a plaintiff [must] 'plausibly allege that: (1) defendants discriminated . . . against him, (2) "because" he has [engaged in protected activity].'" Offor v. Mercy Med. Ctr., No. 15CV2219ADSSIL, 2016 WL 929350, at *17 (E.D.N.Y. Mar. 10, 2016) (quoting Vega, 801 F.3d at 90). Even at the motion to dismiss stage, "a plaintiff must plausibly plead a connection" between the actions about which he complains and "his engagement in protected activity." Vega, 801 F.3d at 90; see Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (for a claim based on retaliation under Title VII, "a plaintiff must plead facts that would tend to show that . . . there exists a causal connection between the protected activity and the [defendant's] action."); Offor, 2016 WL 929350, at *19 (granting motion to dismiss where "the [complaint] does not plausibly link the [defendants'] actions to any 'protected activity.'"); Henriquez-Ford v. Council of Sch. Supervisors & Administrators, No. 14-CV-2496 (JPO), 2016 WL 93863, at *2 (S.D.N.Y. Jan. 7, 2016) ("To plead retaliation, a complaint must allege that a plaintiff "engaged in protected activity" that was causally connected to the retaliation." (citing Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks omitted))).

31

Under Title VII, "[a] protected activity is one that 'protest[s] or oppose[s]

statutorily prohibited discrimination.'" Kouakou v. Fideliscare New York, 920 F. Supp. 2d 391,

400 (S.D.N.Y. 2012) (alterations in Kouakou) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560,

566 (2d Cir. 2000)). "'Unfair treatment . . . is not actionable under the civil rights laws[,

however,] and a complaint about it does not constitute protected activity. To be actionable, the

unfair treatment must be due to one's membership in a protected class and the complaint must

make that point sufficiently clear.'" Sank, 2011 WL 5120668, at *9 (quoting Ramos v. City of

New York, No. 96 Civ. 3787(DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997)); see

Santucci v. Veneman, No. 01 CIV. 6644 (CBM), 2002 WL 31255115, at *3 (S.D.N.Y. Oct. 8,

2002) ("[I]f the conduct complained of by the plaintiff had nothing to do with race, color,

religion, sex, or national origin, an action [for retaliation] cannot be maintained under Title

VII.").

Moreover, "'[a] complaint [to an employer] is not protected activity unless it puts

the employer on notice that the employee is protesting unlawful discrimination.'" Sank, 2011

WL 5120668, at *9 (quoting Tomasino v. St. John's Univ., No. 08–CV–2059(JG)(ALC), 2010

WL 3721047, at *10 (E.D.N.Y. Sept. 23, 2010)); see Kelly v. Howard I. Shapiro & Associates

Consulting Engineers, P.C., No. 11-CV-5035 ADS AKT, 2012 WL 3241402, at *14 (E.D.N.Y.

Aug. 3, 2012), aff'd, 716 F.3d 10 (2d Cir. 2013) ("'[I]mplicit in the requirement that the

employer have been aware of the protected activity is the requirement that it understood, or could

reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by

32

Title VII.'" (quoting Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998))). [9]

        With respect to demonstrating a causal connection between protected activity and alleged retaliatory acts, such a link "can be shown indirectly by timing." Vega, 801 F.3d at 90 (citing Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001)). To allege an inference of retaliation based on temporal proximity, however, "the temporal proximity between the protected activity and the . . . action taken by the employer must be 'very close.'" Harrison v. New York City Admin. for Children's Servs., No. 02CIV.0947RCCRLE, 2003 WL 21640381, at *5 (S.D.N.Y. July 7, 2003); see also Brown v. City of New York, No. 14 CIV. 2668 PAE, 2014 WL 5861995, at *2 (S.D.N.Y. Nov. 12, 2014), aff'd, 622 F. App'x 19 (2d Cir. 2015) ("'[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the [complained-about action] does not allow for an inference of causation.'" (quoting Murray v. Visiting Nurse Servs. Of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007))); Ashok v. Barnhart, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) ("Although the Second Circuit does not define how long 'very close' is, the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months"; collecting cases (footnote omitted)).

---

[9] Plaintiff argues that "[e]xercising one's right to register complaints about the conditions of the workplace, as Plaintiff did here, is a protected Title VII activity." (Pltf. Br. (Dkt. No. 41) at 27; see also Am. Cmplt. (Dkt. No. 15) ¶¶ 119, 122, 124 (alleging that Defendants retaliated against Plaintiff for "exercising his right to engage in the protected activity of registering complaints about the workplace")). To the extent that Plaintiff contends that all complaints about the workplace are protected activity under Title VII, however, he is mistaken. The only complaints about the workplace that constitute protected activity are those (1) addressing "'statutorily prohibited discrimination,'" Kouakou, 920 F. Supp. 2d at 400 (quoting Cruz, 202 F.3d at 566); and (2) that "'put[] the employer on notice that the employee is protesting unlawful discrimination.'" Sank, 2011 WL 5120668, at *9 (quoting Tomasino, 2010 WL 3721047, at *10).

Here, Plaintiff cites numerous instances of mistreatment at work that he claims constitute "retaliation for . . . exercising his right to engage in the protected activity of registering complaints about the workplace." (Am. Cmplt. (Dkt. No. 15) ¶ 119) The "protected activity" cited by Plaintiff is not Title VII "protected activity," however, and even if certain of Plaintiff's complaints could be construed as "protected activity," he has not pled facts sufficient to demonstrate a causal connection between his complaints and the alleged retaliatory acts.

Plaintiff alleges that Defendant Danberry falsely accused him of not following search warrant protocols in 2010, and subsequently filed false disciplinary charges against him for transporting a prisoner in an unauthorized police vehicle. (Id. ¶¶ 22-23) After Plaintiff complained, Danberry transferred Plaintiff to the 13th Precinct. (Id. ¶¶ 27, 29) Nothing in the Amended Complaint suggests, however, that Plaintiff's complaints to or about Danberry related in any way to unlawful discrimination. Accordingly, Plaintiff's complaints about Danberry are not Title VII protected activity.

Plaintiff also alleges that D'Adamo attempted to force Plaintiff to accept a "voluntary" transfer from the 13th Precinct to the Anti-Crime Unit. (Id. ¶ 34) Plaintiff complained to D'Adamo about the proposed transfer. (Id. ¶ 35) Plaintiff also told D'Adamo that "the Conditions Unit [in the Anti-Crime Unit] had a high number of Civilian Complaint Review Board [c]omplaints[] about police misconduct/unlawful conduct . . . and that he . . . did not wish to work there." (Id.) Plaintiff alleges that "in retaliation against Plaintiff for refusing the 'voluntary' transfer[,] . . . D'Adamo . . . complained about Plaintiff . . . to Purtell." (Id. ¶ 36) D'Adamo and Purtell then involuntarily transferred Plaintiff. (Id. ¶ 37)

34

Once again, nothing in the Amended Complaint suggests that Plaintiff's

complaint to D'Adamo related to unlawful discrimination. Accordingly, Plaintiff's complaint to

D'Adamo does not constitute Title VII protected activity.

Plaintiff further alleges that, between June 2012 and April 2013, he repeatedly

made complaints about Rajan "to the entire NYPD chain of command assigned to Patrol

Borough Manhattan South." (Id. ¶ 44) Plaintiff complained about

> Rajan's history of excessive force, violent acts, conduct and/or behavior
> towards/against others including . . . targeting poor, Black/African American and
> and/or Hispanic citizens.

(Id. ¶ 45) Plaintiff also told NYPD officials about Rajan's

> violence/excessive force against other officers and against those citizens who
> Defendant Rajan stops, detains, arrests and/or imprisons; thereby causing them to
> sustain physical injury therefrom and thereby exposing the NYPD and its officers
> to unnecessary and needless excessive force, brutality, assault, battery and other
> complaints being made for physical injuries being sustained at the hands of
> Defendant Rajan. . . .

(Id. ¶ 45) Plaintiff alleges that he "repeatedly requested that . . . the NYPD . . . conduct an

investigation of Defendant Rajan . . . his official misconduct and unlawful/discriminatory

actions, conduct and behaviors, including his acts of violence and excessive force. . . ." (Id. ¶

44)

Plaintiff further claims that Rajan physically assaulted him in retaliation for

complaints that Plaintiff had made to NYPD supervisors about Rajan. (Id. ¶ 53) Rajan told

Plaintiff that he had learned from "D'Adamo, Piekarski, Traynor, Romero and/or Purtell" that

Plaintiff had complained about Rajan's "unlawful/violent conduct, actions and behavior." (Id.)

Plaintiff's complaints about Rajan do not constitute Title VII protected activity,

however, because they do not involve claims of unlawful discrimination in the workplace. For

example, to the extent that Plaintiff complained about "Rajan's history of excessive force,

35

violent acts, conduct and/or behavior towards/against others including . . . targeting poor,
Black/African American and and/or Hispanic citizens" (id. ¶ 45), Plaintiff was complaining
about police misconduct and not about unlawful discrimination in the workplace. See Escoffier
v. City of New York, No. 13-CV-3918 (JPO), 2016 WL 590229, at \*4 (S.D.N.Y. Feb. 11, 2016)
(finding that Title VII complaint alleging excessive use of force by police officers against a
citizen must be dismissed where the citizen "is not an employee of the Police Department");
Alvarez v. City of New York, 2 F. Supp. 2d 509, 515 n.8 (S.D.N.Y. 1998) (noting that disclosing
"policy brutality" does not constitute protected activity for purposes of Title VII, which
"prohibits retaliation . . . for . . . opposing employment discrimination in the workplace").
Although Plaintiff claims that he told NYPD supervisors about Rajan's "violence/excessive force
against other officers and against . . . citizens," Plaintiff does not plead facts suggesting that he
told supervisors that Rajan's alleged violence against fellow officers stemmed from
discriminatory animus. Because Plaintiff has not pled facts suggesting that he told supervisors
that Rajan had engaged in discriminatory acts in the workplace, Plaintiff has not plausibly
alleged that Rajan's assault on him was retaliation for Plaintiff's complaints about Rajan's
discriminatory acts.

            Even if Plaintiff's allegations about his complaints concerning Rajan could
somehow be construed as complaints about unlawful discrimination in the workplace, Plaintiff
does not specify to whom he made these complaints, or when during the seven-month period
between June 2012 and April 2013 they were made. Accordingly, the Amended Complaint has
not pled facts sufficient to show a causal connection between Plaintiff's complaints about
discrimination in the workplace and the alleged retaliatory acts, including the assault by Rajan.

Plaintiff also alleges that NYPD personnel brought disciplinary charges against him "in direct retaliation" for his April 17-19, 2013 complaints about "Rajan's unlawful assault/attack/use of excessive force against Plaintiff on said dates." (Am. Cmplt. (Dkt. No. 15) ¶ 65) Nothing in the Amended Complaint suggests that Plaintiff's April 2013 complaints about Rajan involved unlawful discrimination in the workplace, however. Instead, Plaintiff states that he complained about Rajan's history of violent conduct (id. ¶ 51) and Rajan's "unlawful attack/assault/choking/battery/excessive force" on Plaintiff. (Id. ¶ 61) Because Plaintiff's complaints about Rajan did not involve workplace discrimination, they do not constitute Title VII protected activity. Accordingly, any actions taken in "retaliation" for Plaintiff's complaints are not actionable under Title VII.

Finally, Plaintiff alleges that Thieleke – as part of "the Defendants' continued and furthered efforts to protect Defendant Rajan, cover up Defendant Rajan's unlawful and violent conduct and to prevent any adverse and/or disciplinary actions being taken against Defendant Rajan" – told Plaintiff to lie about being physically assaulted by Rajan. (Id. ¶ 67) Defendants then retaliated against Plaintiff "for not lying about the choking/strangulation by Defendant Rajan" and "to protect/shield Defendant Rajan," including by initiating a GO 15 investigation of Plaintiff, filing disciplinary charges against him, transferring him to a VIPER unit, placing him on modified duty, vising his home while he was on sick leave, and assigning a surveillance unit to watch him. (Id. ¶¶ 68, 73, 80-82, 83)

Once again, the Amended Complaint does not allege any connection between these alleged retaliatory acts and any Title VII protected activity.

Because the Amended Complaint does not plead facts showing that the hostility Plaintiff experienced in the workplace was retaliation for Title VII protected activity, Plaintiff

37

has not stated a claim for hostile work environment based on retaliatory animus.[10]  See Welenc v. PAL Envtl. Corp., Local 78, No. 09 CIV. 8523 PAC FM, 2011 WL 846729, at *5 (S.D.N.Y. Feb. 7, 2011), report and recommendation adopted sub nom. Welenc v. PAL Envtl. Corp., No. 09 CIV. 8523 PAC FM, 2011 WL 1044486 (S.D.N.Y. Mar. 21, 2011) (claim for hostile work environment must be dismissed absent "'a showing that the employer's allegedly wrongful conduct derived from . . . a . . . prohibited factor.'" (quoting Clemente v. N.Y. State Div. of Parole, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010))).

### 3.   Constructive Discharge

Plaintiff asserts that, based on the discriminatory and retaliatory conduct alleged in the Amended Complaint, he was "compelled and forced . . . to resign his employment, title, position, rank, authority, salary and benefits as an NYPD officer, [and was] thereby constructively terminat[ed]" on December 1, 2013.  (Am. Cmplt. (Dkt. No. 15) ¶¶ 83, 119)

"To state a claim for constructive discharge an employee must show that his employer deliberately made his working conditions so intolerable that the employee was forced

---

[10]  As discussed above, the Court has considered Defendants' pre-June 29, 2013 conduct in connection with Plaintiff's hostile work environment claims, see Nat'l R.R. Passenger Corp., 536 U.S. at 106, but these incidents are not actionable as discrete discriminatory acts under Title VII, because they are time-barred.  Plaintiff has also alleged post-June 29, 2013 conduct, however, including (1) that between April 19, 2013 and December 1, 2013, NYPD personnel visited Plaintiff's home and assigned a surveillance unit to watch him while he was out on sick leave (Am. Cmplt. (Dkt. No. 15) ¶ 82), and (2) that on July 8, 2013, disciplinary charges were filed against him for engaging in a physical altercation with Rajan.  (Id. ¶ 80)  While claims based on this conduct are not time-barred, they still fail, because Plaintiff has not pled facts sufficient to demonstrate that these acts were motivated by discriminatory or retaliatory animus.  See Vega, 801 F.3d at 85 (at the pleading stage, "Title VII . . . requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." (emphasis added)); Offor, 2016 WL 929350, at *17 (to state a Title VII retaliation claim, "a plaintiff [must] 'plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) "because" he has [engaged in protected activity].'" (emphasis added) (quoting Vega, 801 F.3d at 90)).

into an involuntary resignation." Cepeda v. Mount Sinai Servs. of Mount Sinai Sch. of Med., No. 02 CIV.3378 (AGS), 2003 WL 367879, at \*2 (S.D.N.Y. Feb. 19, 2003) (citing Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983)). Moreover, a plaintiff must plausibly allege that "the discharge occurred in circumstance giving rise to an inference of discrimination based on [a protected characteristic]." Pecora v. Brady, No. 90 CIV. 7612 (JSM), 1992 WL 162640, at \*1 (S.D.N.Y. June 19, 1992). "Constructive discharge is, in effect, "an aggravated case of . . . hostile work environment." Petyan v. New York City Law Dep't, No. 14-CV-1434 GBD JLC, 2015 WL 1855961, at \*9 n.10 (S.D.N.Y. Apr. 23, 2015), report and recommendation adopted, No. 14 CIV. 1434 GBD JLC, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (alteration in Petyan) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 146 (2004)).

Here, as discussed above, the Amended Complaint does not allege facts sufficient to demonstrate that any of the acts that Plaintiff alleges forced him to resign were motivated by discriminatory animus or in retaliation for protected activity. Accordingly, Plaintiff has not stated a claim for constructive discharge. See, e.g., Zick, 2012 WL 4785703, at \*7 (dismissing constructive discharge claim where plaintiff's allegations did not give "rise to the inference of discrimination on the basis of [his] membership in a protected class."); see also White v. New York State Dept of Corr. Servs. & Cmty. Supervision, No. 14 CV 10271 (VB), 2016 WL 1028009, at \*1 (S.D.N.Y. Mar. 14, 2016) ("[B]ecause the amended complaint does not plead a hostile work environment claim, plaintiff's constructive discharge claim necessarily fails as well." (citing Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010)); Murray-Dahnir v. Lowes Corp., No. 98 CIV. 9057 (LMM), 2000 WL 1119094, at \*2 (S.D.N.Y. Aug. 8, 2000) (Because plaintiff's "allegations . . . fail to articulate the racial animus necessary

to support a hostile work environment claim, they a fortiori fail to support a claim for

constructive discharge.").[11]

## IX.   STATE LAW CLAIMS

"[U]nder 28 U.S.C. § 1367(c), a district court may decline to exercise

supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction."

---

[11]  Plaintiff alleges a cause of action for "failure to prevent" under Section 1986. (Am. Cmplt. (Dkt. No. 15-1) ¶¶ 242-46) "Section 1986 provides for a cause of action for failure to prevent a Section 1985 conspiracy." Petruso v. Schlaefer, 474 F. Supp. 2d 430, 441-42 (E.D.N.Y. 2007), aff'd in part, 312 F. App'x 397 (2d Cir. 2009). "Hence, a § 1986 claim is contingent on a valid § 1985 claim." Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)). "To adequately plead a claim under § 1985 . . . a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Franklin v. Liberty Lines Transit, Inc., No. 13-CV-6701 (NSR), 2016 WL 1078283, at *13 (S.D.N.Y. Mar. 17, 2016) (citing Hollman v. Cnty. of Suffolk, No. 06 CV 3589 (JFB)(ARL), 2011 WL 280927, at * 11 (E.D.N.Y. Jan. 27, 2011); Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)). "The conspiracy must also be 'motivated by some racial or . . . otherwise [protected] class-based, invidious discriminatory animus.'" Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks omitted); citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see Thomsen v. City of New York, No. 15CV2668 (DLC), 2016 WL 590235, at *11 (S.D.N.Y. Feb. 11, 2016) (for a Section 1985 claim, the conspiracy must be "motivated by discriminatory animus" on the basis "of a protected characteristic"). As discussed above, Plaintiff has not pled facts demonstrating that any of the conduct about which he complains was motivated by discriminatory intent. Thus, the Amended Complaint does not make out a valid Section 1985 claim. See Morales v. City of New York, 752 F.3d 234, 238 (2d Cir. 2014) (affirming dismissal of Section 1985 claim where plaintiff "failed to plead facts showing that the defendants acted with discriminatory animus."). Because Plaintiff has not pled facts sufficient to make out a Section 1985 claim, his "failure to prevent" claim under Section 1986 will be dismissed. See Johnson v. City of New York, 669 F. Supp. 2d 444, 452 (S.D.N.Y. 2009) ("Since this Court has already determined that [plaintiff] fails to state a valid claim pursuant to section 1985, his section 1986 claim must also be dismissed.").

Plaintiff also alleges a failure to prevent claim under Section 1983. (Am. Cmplt. (Dkt. No. 15) ¶¶ 242-46) As discussed above, however, Plaintiff's Section 1983 claim against the City fails because he has not pled facts sufficient to make out a Monell claim, and his Section 1983 claims against the Individual Defendants have been dismissed for failure to effect service.

Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie–Mellon Univ. v.

Cohill, 484 U.S. 343, 350 (1988)). "[W]hen all federal claims are eliminated in the early stages

of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction

over remaining state law claims and dismissing them without prejudice." Tops Mkts., Inc. v.

Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (emphasis omitted) (citing Carnegie–Mellon

Univ., 484 U.S. at 350). There is no reason to deviate from this rule here. Accordingly, the

Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those

claims will be dismissed without prejudice.

## X.    LEAVE TO AMEND

Although Plaintiff has not requested leave to re-plead, the Court has considered

whether he should be given an opportunity to do so. Leave to amend should be "freely give[n]

. . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion

in determining whether to grant leave to amend. . . ." Gurary v. Winehouse, 235 F.3d 793, 801

(2d Cir. 2000).

Leave to amend may properly be denied in cases of "'undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir.

2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of N.Y., No.

10 Civ. 7218(HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule

15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely

given,' leave to amend need not be granted where the proposed amendment is futile." (citations

omitted)).

41

Leave to amend is denied as to Plaintiff's claims against the Individual

Defendants and the NYPD. The defects in these claims are not the result of "inadequate[] or

inartful[]" pleading, and are not susceptible to cure. See Cuoco v. Moritsugu, 222 F.3d 99, 112

(2d Cir. 2000). Amending these claims would therefore be futile. Leave to amend is also denied

as to Plaintiff's Title VII claims for discrete acts of discrimination and retaliation that occurred

prior to June 29, 2013, because those claims are time-barred.

Plaintiff's Monell claim, Section 1986 claim, and Title VII claims for (1) hostile

work environment, (2) constructive discharge, and (3) discrete acts of discrimination and

retaliation based on incidents occurring after June 29, 2013, will be dismissed with leave to

amend. "Where the possibility exists that [a] defect can be cured," leave to amend "should

normally be granted." Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL

563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Sch.,

Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the

grounds that it is "inadequate[ly] pled," there is "a strong preference for allowing [a] plaintiff[]

to amend." In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., No. 07 CIV.

10453, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899

F.2d 195, 198 (2d Cir. 1990)).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. Plaintiff's

claims against the Individual Defendants and the NYPD, and claims for discrete acts of

discrimination and retaliation under Title VII based on incidents occurring before June 29, 2013,

are dismissed without leave to amend. Plaintiff's Monell, Section 1986, and Title VII claims for

(1) hostile work environment, (2) constructive discharge, and (3) discrete acts of discrimination

and retaliation based on incidents occurring after June 29, 2013, are dismissed with leave to amend. Any Second Amended Complaint will be filed by April 25, 2016.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 38) and to terminate Defendants New York City Police Department, Captain Deodat Urprasad, Deputy Inspector John D'Adamo, Chief Thomas Purtell, Inspector John Danberry, Sergeant John Rajan, Lieutenant Ariola, Captain Nicole Papamichael, Deputy Chief McNamara, Sergeant George Ebrahim, Inspector Paul Piekarski, Captain Thomas Traynor, Lieutenant Frank Basendello, Lieutenant Jesus Romero, and Sergeant Cliff Thielcke.

Dated: New York, New York
       March 29, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge

43